FIRST PARISH IN WOBURN *vs.* COUNTY OF MIDDLESEX.

A grant by a town, out of its common land, of land for a meeting-house, passes the right to
so much land outside of a railing around the meeting-house, as is reasonably necessary
for the parishioners to tie their horses upon on the Lord's day.

Upon the taking, for a highway, of part of land held by a parish for the site of a meeting-
house and its appurtenances, the parish may recover against the county the diminution
of the value of the land for the purpose to which it is devoted, if it does not appear
that they have any other right to the land; but cannot recover damages for the antici-
pated annoyance of worshippers in the meeting-house, by the use of the highway on
the Lord's day by noisy and dissolute persons, riding for pleasure.

PETITION for a jury to assess the damages sustained by the petitioners by the taking of land for a highway in Woburn.

At the trial before the sheriff, the following facts appeared: The land taken and the adjacent common were granted to the town of Woburn before the year 1700 for parochial purposes. In 1795, by a vote of the town, a school-house was erected upon part of the land, and at a town meeting held in June 1808 it was voted to erect the meeting-house upon the ground where this school-house then stood. The meeting-house was erected accordingly, on that spot, but covering more land, and posts, with a railing upon them for the purpose of tying horses by the parishioners and others at public meetings, were placed around the meeting-house, four or five feet from it, commencing and ending at the corners of the porch, which projected a few feet from the body of the house. The meeting-house was also used as a town house for many years. This house and railing were taken down in 1840, and a larger house built, but within the limits of the old railing. Since 1808 the parishioners were accustomed, when attending church, to tie their horses to this railing, extending so far into the common as to occupy the land taken for the highway. The land so taken was all outside of the railing, and was always open and common, and used as a training field; on other days than Sundays the railing was used for tying horses by those who were not parishioners; and the parishioners and other abutters on the common at various

times placed their wood and coal and prepared it for use on the land.

The sheriff gave the following instructions, which were not excepted to : " That if the property in dispute was originally granted to the town for church uses, then, upon the incorporation of a new parish in the town, all such property became the property of the parish, unless by a vote of the town and parish, or some well defined exclusive municipal use, it had been acquired by the town; that the occasional and temporary use of this land by the town, while the town and parish were the same body, did not make any evidence of title ; that if the use since the separation of the two bodies had been mixed and by both, such use must be taken as permissive, and in subordination to the legal title."

The sheriff also instructed the jury, against the objection of the respondents, that the grant of land for a meeting-house " would carry with it (in the absence of all limitation or definition) all proper appendages for the use of such a building as was usua. and customary in the county; that the petitioners were entitled, not only to the land covered by the meeting-house and railed in, but to so much of the common land outside of the railing as was reasonably incident from necessity or convenience to purposes exclusively parochial ; that the tying of horses by the parishioners, while attending church, might be found by the jury to be a purpose exclusively parochial in this connection ; and that if the land taken for the highway was reasonably incident from convenience and necessity to that purpose, then they were entitled to damage for the land so taken "; " that if the land or buildings of the petitioners were rendered less valuable to them, for the use to which they had devoted it, by the laying out of the highway, they were entitled to a full compensation for such deterioration ; " and " that they were entitled to damages because the highway might be used by noisy and dissolute persons, riding for pleasure on Sundays, and worshippers in the church might thereby be annoyed."

A verdict was given for the petitioners, returned by the sheriff with a certificate of his rulings to the court of common pleas, and accepted by that court. The respondents appealed.

*D. S. Richardson & J. P. Converse,* for the respondents. 1. The ruling as to the petitioners' right to land outside the railing was erroneous. *Lakin* v. *Ames,* 10 Cush. 198. *Medford Parish* v. *Medford,* 21 Pick. 199. 2. The petitioners were not entitled to damages by reason of their land or building having been rendered less valuable to them for the use to which they had devoted it. *Smith* v. *Boston,* 7 Cush. 254. 3. The county are not liable to indemnify the petitioners against any unlawful acts of individuals, such as making a noise while driving on Sundays, in violation of the Rev. Sts. *c.* 50, § 2. And such damages are too contingent to be the subject of a legal claim. *Smith* v. *Boston,* 7 Cush. 254. *Crain* v. *Petrie,* 6 Hill, 522.

*B. F. Butler & J. M. Randall,* for the petitioners. 1. The instruction as to the land outside the railing was correct. *Lakin* v. *Ames,* 10 Cush. 217, 218. 2. The petitioners, having a right to have their meeting-house upon that spot, and having been injured in that right by the making of the highway, are entitled to recover full damages for the injury thus occasioned, including every element of property. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 385. 3. The question, whether the manner in which the highway would be used would render their property less valuable for the use to which they had devoted it, was properly submitted to the jury. *Ashby* v. *Eastern Railroad,* 5 Met. 368. It does not differ from the noise, smoke and dust of a railroad, which have always been included in such damages. Rev. Sts. *c.* 39, § 56; *c.* 24, §§ 31, 32. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 385. *Dodge* v. *County Commissioners,* 3 Met. 380.

METCALF, J. We are of opinion that the instructions were correct, which the sheriff gave to the jury respecting the rights acquired by the petitioners under the grant made by the town in 1808. Those instructions conformed to the decision which was made, on much consideration, in the case of *Lakin* v. *Ames,* 10 Cush. 217, 218.

The true rule of damages, in most cases of this nature, is the diminution of the absolute value of the land-owner's property, by the laying out of the highway, and not the diminution of its

value for the specific use to which he had devoted it. In the present case, however, it does not appear that the petitioners have any right or title to the land in question, except for the site of a meeting-house and appurtenances. We therefore cannot decide that there was any error in the instruction to the jury, that the petitioners were entitled to compensation to the full extent to which their property was rendered less valuable for the use to which they had devoted it, by the laying out of the highway.

But we are of opinion that the anticipated annoyance of worshippers in the meeting-house, by the use of the highway on Sundays, by noisy and dissolute persons riding for pleasure, was no legal ground of damages. A jury, in assessing damages, cannot legally act on the assumption that the land-owner will be annoyed by the unlawful acts of travellers. For the misinstruction on this point, the verdict must be set aside, and the case remanded to the county commissioners, with directions that a new warrant for a jury be issued.