106 So.2d 616 (1958)
SWIFT & COMPANY, a corporation, etc., Appellant,
v.
The HOUSING AUTHORITY OF THE CITY OF PLANT CITY, Florida, etc., Appellee.
No. 493.
District Court of Appeal of Florida. Second District.
November 12, 1958.
Allen, Dell, Frank & Trinkle, L. Robert Frank, Tampa, for appellant.
Liles & Edwards, Robert S. Edwards, Paul S. Buchman, Plant City, for appellee.
ALLEN, Judge.
This is an appeal from a final judgment in a condemnation suit. The Housing Authority of the City of Plant City sued to condemn certain land owned by Swift & Company and leased to certain others. The lessees waived any claim, and upon a stipulation of facts by the remaining parties, the trial judge denied defendant's proffer of evidence tending to show value of the land as phosphate land and entered judgment on a stipulated value as residential land. Defendant appeals.
The appellee, The Housing Authority, filed on April 19, 1957, its petition to condemn approximately ten acres of land located in Hillsborough County, Florida, and owned by appellant, Swift & Company. Appellee averred in its complaint that said land was vacant, unimproved and occupied only as truck crop lands under lease to other defendants named in the petition. These latter defendants were dismissed from the proceedings, or disclaimed an interest in said property.
To the condemnation petition appellant filed its answer averring that said property was valuable land and contained rich mineral and rock deposits, having been acquired by appellant for that reason, that said property was adjacent to and a part of other lands owned by appellant and that condemnation of the same would greatly depreciate and damage the value of said adjacent land.
*617 Prior to the pretrial conference, the appellant and the appellee entered into a written stipulation of facts, which, among other things, hereinafter discussed, admitted the right to condemn; the ownership of the property; the fact that appellee had taken the property under a declaration of taking; the purpose for which it was condemned; the Zoning Ordinance of Plant City, Florida; description, nature and locale of the property; the platted nature of a portion of the property; the extent of the testimony of appellee's appraisers as to the value of the property for residential purposes; the fact that said appraisers did not consider the phosphate content of said property or make any evaluation as to its market value as phosphate property; and the standard for setting a reasonable attorney's fee.
At the pretrial conference appellant asserted its right to prove at the trial the value of the land as phosphate land and proffered the evidence it proposed to establish such value. The appellee objected to this testimony, and the lower court sustained the objection, concluding "that the overall value is as a resident type and that it is not to be assessed for value as for phosphate mining purposes." Appellant announced that it had no further evidence to offer and the court then directed judgment be entered on the basis of appellee's appraisal of the land for residential use only.
Final judgment was thereupon entered, on January 22, 1958, reciting that the cause had been heard upon the stipulation of certain facts, that the defendant had proffered evidence in support of an enhanced value arising from mineral and rock deposits in the land in question, that the court sustained appellee's objection to the admission of the same, and that, in view of the fact that appellant announced it had no further testimony to offer, it was unnecessary to submit the cause to a jury.
The appellee argues, in its brief, at length under its Point 3:
"Did appellant's proffer made at the pretrial conference tend to prove the proper measure of damages?"
We shall not allude further to the question above stated by the appellee as we think the following excerpts from the pretrial conference show that the able trial judge, who presided at this conference, based his ruling squarely upon the theory that the zoning ordinance prohibited the mining of phosphate within the city limits of Plant City and that this, therefore, precluded any proof of value of the land as phosphate land. Clearly, the ruling was not based upon any technical objection to the proffer by defendant.
The ruling of the trial judge was made during a pretrial conference at which various stipulations had been filed by the parties admitting the above mentioned facts, such as the zoning ordinance, the value of the property for residential purposes, etc. The transcript of the trial proceedings, appearing on page 26 of the appendix of the appellant, states:
"Mr. Frank: If your Honor please, this is a pretrial conference called to determine the issues of this condemnation case, and it is the position of the Defendant that it is entitled to offer and prove at the trial of the case the value of the land as phosphate land. In support of this contention we offer and propose to prove the following facts:"
The defendant then set forth various facts to show the value of the phosphate in the land: the analyses of the samples of the phosphate bearing land, and the manner in which the engineer takes the analyses and computes the average run or per ton phosphate per acre, the amount of marketable phosphate, the total amount of tonnage in the land, the amount of overburden necessary to reach this tonnage and various other factors used by the appraiser in the phosphate field in determining the value of phosphate land.
*618 Then, on page 34 of the Appendix, appears the following:
"Our expert appraiser will testify that this land represents one of the choicest mineable pieces of phosphate land Swift could obtain; that it is superior in quality by virtue of its light overburden and deep phosphate strata; that based upon similar values of land in other parts of the phosphate field, the land is, in his opinion, worth after deducting reasonable costs of reclamation, in excess of $25,000.00, and added to this is approximately $5,000.00, the resulting loss on the necessary courtesy or border strip to be left on the border of the property in question to protect the proposed housing site in future mining operations, makes a total in excess of $30,000.00 loss."
The defendant next sought to offer proof of the time it would take to mine the land, the type of mining that would be necessary and other data relative to mining.
To the tendered proof, the condemnor offered the following objections (Appendix 35):
"Mr. Edwards: To which proffered testimony, may it please the Court, the housing authority objects on the grounds it is incompetent, irrelevant and immaterial and is not proper to be considered as an element of damages in this proceeding, and on the further grounds that:
"The existing zoning restrictions imposed by the zoning ordinance of the city of Plant City circumscribes the available uses to which the land may be devoted, said land being zoned R1 for residential use, and no evidence in support of an alleged enhanced value may be admitted where such enhanced value would be the result of a proscribed use.
"Most of said land lies within a platted subdivision, in which condition it is not adaptable to phosphate mining.
"Section 14 of the said zoning ordinance prohibited excavation of property, except for construction purposes.
"The proferred testimony does not tend to prove any proper measure of damages.
"The Court: Well, what we are concerned with, as I understand it, at this hearing this afternoon is whether the tract in question being taken may be valued for the purpose of assessing damages as phosphate land.
"Mr. Frank: That's correct.
"The Court: I have gone through the records, as I told you folks previously, and I have come to the conclusion that the overall value is as a residential type, and that it is not to be assessed for value as for phosphate mining purposes and therefore I am going to sustain the objection."
The appellant aptly states the question involved on this appeal:
"Point 1: The appellant was entitled to go to trial and introduce evidence on the highest and best use for which said property was adaptable notwithstanding the alleged restrictions against such use by the zoning ordinance."
The appellant, in its brief, cites several authorities to the effect that the existence of mineral deposits is an element to be considered in determining the market value of land. The cases cited so hold. See Nichols on Eminent Domain, 3rd Ed., § 13.22; Montana R. Co. v. Warren, 1890, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681; Tigertail Quarries v. United States, 5 Cir., 1944, 143 F.2d 110. We do not construe the order of the trial judge, however, as holding contrary on this question. It is apparent that his decision was based on the theory that the lands could not be valued for mining purposes due to the prohibitory influence *619 of an ordinance of the City of Plant City.
The District Court of Appeal for the First District, in the recent case of Board of Com'rs of State Institutions v. Tallahassee Bank & Trust Co., Fla.App. 1958, 100 So.2d 67, 69, had before it a question involving the validity of a zoning ordinance in relation to its prospective use as evidence bearing on the value of the property to be condemned. The Leon County Circuit Court permitted, in a condemnation proceedings, the land owner to file cross-claims for certain declaratory relief, and the condemning authority sought certiorari to review an order denying motions to strike and dismiss the counter claims. The District Court of Appeal held that an order allowing landowners to file cross-claims for declaratory relief adjudicating the operation, validity and application of the zoning ordinances to the property in question and to the determination of the value of the property sought to be acquired by the petitioner, was prospective. Therefore, since no final judgment had been entered, the result of such procedure had not been applied and such order could not be presumed to result in any disadvantage to the condemning authority, the court denied certiorari.
In the above case, the Court, in its opinion, said:
"There is respectable authority to the effect that the proper interests of the respondents can and should be resolved by the jury in condemnation. While no hard and fast rule may be established to govern evidence determining market value, all factors should be considered which would reasonably be given weight in negotiations between a willing seller and willing buyer. This excludes consideration of purely speculative uses for which the property might be adaptable but is presently unavailable, but permits consideration of uses to which the property is reasonably adaptable and for which it is, or in reasonable probability would become, available within a reasonable time. Orgel on Valuation Under Eminent Domain, Volume 1, paragraph 30, p. 141. To warrant admission of testimony as to the value for purposes other than that to which the land is being put, or to which its use is limited by ordinance at the time of the taking, the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time, (3) that the market value of the land has been enhanced by the other use for which it is adaptable.
"It is said in Nichols on Eminent Domain, Second Edition, Volume 1, p. 166, § 219, `When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.' To the same effect see City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 814; United States v. 3969.59 Acres of Land, D.C., 56 F. Supp. 831; Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206.
"The efficiency of the rule is apparent. It makes it unnecessary to resolve any question as to the validity of a zoning ordinance. It permits the trial court to admit evidence of the suitability and adaptability of property under condemnation for a purpose prohibited by the then existing zoning ordinance. It permits the jury to weigh the effect of the zoning restriction against the prospective use, and to weigh the question as to whether there is a reasonable probability that the parcel will be rezoned within the reasonable future to make it available for a use enhancing its value over that of the use limited by the ordinance.

*620 "In presenting these matters to the jury, it would not seem necessary or pertinent to show that the incumbent officials having control of zoning would in fact do so or that in the past they have arbitrarily refused to do so. The abiding presumption is that public officials will fairly and properly perform their duties. The jury should, upon the facts presented, indulge that presumption, and on that basis determine whether the use provided by the ordinance or that insisted upon by the landowner should prevail as a guide for determining the value of the property taken."
In City of Austin v. Cannizzo, 1954, 153 Tex. 324, 267 S.W.2d 808, 814, the Supreme Court of Texas said:
"In the willing seller-willing buyer test of market value it is frequently said that all factors should be considered which would reasonably be given weight in negotiations between a seller and a buyer. 29 C.J.S. Eminent Domain § 159, page 1023. This would exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time. Orgel in his text on Valuation Under Eminent Domain, Vol. 1, § 30, p. 141, footnote 113, says: `The test is well phrased in United States v. 3969.59 Acres of Land, D.C., 56 F. Supp. 831: "To warrant admission of testimony as to the value of land for purposes other than that to which it is being put at the time of the taking, it must first be shown: 1. That the property is adaptable to the other use. 2. That the other use is reasonably probable within the immediate future, or a reasonable time. 3. That the market value of the land has been enhanced thereby."'
"Moving closer to the particular problem presented in this case, it is said in Nichols on Eminent Domain, 2nd Edition, Vol. 1, p. 669, sec. 219: `When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.' * * *
* * * * * *
"Without detailing all the facts in this case which prompt our conclusion, we think the trial court was correct in admitting evidence of the suitability and adaptability of a small part of the property involved for a shopping center. The testimony offered by respondents on this phase of the case was limited to the present value of the prospective use of the property as a shopping center, it being admitted that there was then in existence a zoning ordinance which prohibited its use for that purpose. The jury could weigh the effect of the restriction against the prospective use. They could weigh also the fact that in the entire large area in question, which is fairly remote from the center of Austin, there is nothing resembling a shopping center and, considering the undoubted trend toward such developments, could consider the reasonable probability, if any, that these facts might bring about a rezoning of the property within the reasonable future to make it available for use as a shopping center."
In City of Beverly Hills v. Anger, 1932, 127 Cal. App. 223, 15 P.2d 867, 868, the District Court of Appeal, Third District of Calif., said:
"It is contended the court erred in admitting in evidence the zoning ordinance of the city of Beverly Hills, for the reason that the market value of the *621 land, for condemnation purposes, may not be confined to the mere restricted use to which it is limited by the terms of the ordinance. It is asserted the city may not take advantage in condemnation proceedings of the decreased valuation of lots which is caused by the enacting of a zoning ordinance, but, upon the contrary, that the market value should be estimated on the basis of any reasonable use to which the land may be adapted.
"The zoning ordinance was properly admitted in evidence. It tends to show conditions and restrictions actually affecting the use of the property. Even though these restrictions are for a limited period of time, and may be waived or rescinded, still they do affect the temporary use and market value of the property. Some witnesses testified they took into consideration the possibility that the restrictions might be waived or rescinded. The cross-examination of witnesses was unlimited in that regard. The use to which property may be devoted has a direct bearing upon its market value. In determining the market value of real property, all circumstances and conditions which become either an advantage or a detriment to the property should be considered. We are pointed to no evidence in the present record indicating that the restricting of the use of lots to the construction of dwelling houses for single families has the effect of depreciating the value of the property. These very restrictions tend to create and preserve exclusive residential districts free from objectionable industries and business enterprises. The value of property in such restricted districts is frequently increased rather than diminished. In the absence of evidence to the contrary, a court may not assume that the market value of real property is decreased merely because it is affected by the limitations of its use as provided by a zoning ordinance. The question as to whether a zoning ordinance has the effect of increasing or reducing the value of land included within its provisions is one of fact to be established by evidence. Regardless of whether the value of real property is increased or diminished as a result of the application of a zoning ordinance, the ordinance is competent evidence to be considered in a suit for condemnation of property located within the district which is affected thereby, for the purpose of determining the actual market value thereof. The ordinance is competent evidence for or against the city which enacted it, when the municipality is a party to the condemnation proceeding. Zoning ordinances are uniformly sustained as valid exercise of the police powers of a municipality. The enacting of a zoning ordinance which is adopted by a city in good faith and which actually does affect the market value of real property is nevertheless competent evidence in behalf of the city in a subsequent suit for condemnation of the property for public use. The city is not estopped from proving the actual market value of the property merely because its enforcement of police regulations may have affected the value of the property. * * *"
1 Orgel, Valuation under Eminent Domain, Section 34, page 167, 2d ed. 1953, states:
"The courts have had little difficulty in reaching what seems to us to be a proper result in cases involving zoning ordinances. It is generally held that although an ordinance may prohibit the use of the property for certain purposes at the time of condemnation, yet if there is a reasonable probability that the ordinance may be changed or an exception made, the value for that purpose as affected by the existing ordinance may be considered."
*622 See City of Tyler v. Ginn, Tex.Civ.App. 1949, 225 S.W.2d 997; Andrews v. City of Dallas, Tex.Civ.App. 1950, 232 S.W.2d 753.
On the basis of the above authorities, we hold that, under the facts of this case, the trial judge erred in denying defendant the right to present proof of value of the involved land resulting from its phosphate content.
We do not hold that there are no circumstances under which a judge might properly determine that the chances of a repeal of a zoning ordinance is so remote or questionable that he should restrict the value of property to the present uses and refuse to permit valuation based on a repeal of such zoning regulation.
This case is reversed on the question of damages only for further proceedings in accordance with this opinion.
Reversed.
KANNER, C.J., and SHANNON, J., concur.