182 So.2d 483 (1966)
John C. STANINGER, Louise B. Staninger, Robert H. Milford, Frances Milford, L.B. Milford and Dorothy Milford, Appellants,
v.
JACKSONVILLE EXPRESSWAY AUTHORITY, a corporate agency of the State of Florida, Appellee.
No. G-415.
District Court of Appeal of Florida. First District.
February 10, 1966.
*484 Greene, Greene & Kennelly, Jacksonville, for appellants.
Jones & Foerster, Jacksonville, for appellee.
STURGIS, Judge.
Appellant landowners bring this appeal to review a final judgment in a condemnation proceeding, complaining that the trial court erred (1) in permitting the jury to consider the effect of private covenants and restrictions upon the use of the land in arriving at the amount to be paid for appropriation thereof; (2) in refusing to allow a witness for appellants to state an opinion, based on his investigation of similar situations, as to the cost and reasonable probability of the removal of said restrictions; and (3) in admitting testimony as to the amount the landowner paid for the property approximately four years prior to the taking.
The property involved consists of Lots 1, 8, 9, 10 and 11, Block 5, of Bridgewater Subdivision, Duval County, Florida, per plat recorded July 8, 1946. Said subdivision consists of 91 residential lots, all of which are subject to a restrictive covenant imposed by the developers on July 12, 1946, limiting the use to single-family residential purposes. As of the date of appropriation appellants' five lots and two others were vacant, and the remainder were being used for the purpose as restricted.
On October 24, 1964, the Duval County Commission zoned Lots 1, 10 and 11, fronting 197.52 feet on Beach Boulevard (formerly Hogan Road and now a multilane thoroughfare) as "Business A-1," and zoned Lots 8 and 9 as "Residential C." The record does not disclose the specific uses which, absent overriding private covenants or restrictions running with the land, would be permissible under said zoning classifications. In view of our conclusions, however, such data is immaterial.
The condemning authority qualified one Richard D. Barker as an expert witness on the material issue of the amount of compensation to be paid for appropriation of the subject lots. He testified that in his opinion the value as of the date of taking was $7,475.00. In arriving at that figure he took into consideration an item *485 of $3,000.00 as to which there is no dispute, estimated to be the reasonable expense necessary to be incurred prior to use for the restricted purpose to have the lots filled to the grade level of streets on which they front. He also took into consideration the limitation on use under said restrictive covenants, as to which he said, in effect, that he saw no way except by judicial decree for the same to be removed prior to the time specified by the developers. The basis for his valuation was the premise that the use as so restricted was the highest and best use as of the date of taking.
Appellants qualified two witnesses as experts upon said issue of value. The basis for their estimate of value was that despite said restrictive covenants, the highest and best use of the property at time of taking was for business and multiunit apartment purposes, and appellants insist that such basis alone prevails under the facts. One of appellants' witnesses valued same at $59,256.00, and the other at $81,400.00.
One of the owners, John C. Staninger, being called by appellee as an adverse witness, testified over objection of his counsel that he and his co-owners purchased said lots in 1960 or 1961 for $6,200.00 or $6,300.00 from a corporation of which he was vice president, and there is nothing to indicate that such was not an arms-length transaction.
The jury awarded $8,000.00 for the taking, thus allowing a greater value than that assigned by appellee's witness but less than that assigned by appellants' witnesses.
Turning to the effect of the restrictive covenants, the record is clear that appellants did not at any time in the course of the trial object to the introduction of the covenants in evidence; that their first objection in that behalf was by way of an exception to a charge given after the court had refused to charge the jury to the effect that it should give no consideration to the restrictive covenants placed on the use of the land by the subdivider or developer and should base its verdict upon the highest and best present use thereof, the covenants notwithstanding. The court charged, inter alia:
"The rezoning of property for use inconsistent with restrictive covenants, if any, on the property, does not by itself remove or release such restrictions. However, if it is shown by, and you find from the preponderance of the evidence, that it is reasonably probable that existing regulations or restrictive agreements prohibiting the use of the property for business purposes may be removed by agreement of the parties concerned, or by judicial decree, then the value of such property for business purposes may be considered along with all the other circumstances having reasonable relation to the value of the property."
It is well settled that the zoning or rezoning of real property cannot in any way abolish, abrogate or enlarge lawful contractual covenants and restrictions pertaining thereto. Zoning ordinances regulate land uses through the exercise of police power in accordance with what is presumably a comprehensive plan for the entire community. As said by Rathkopf on The Law of Zoning and Planning, Chapter 74, § 1:
"It is entirely divorced in concept, creation, enforcement and administration from restrictions arising out of agreement between private parties who may, in the exercise of their constitutional right of freedom of contract, impose whatever restrictions upon the use of their lands that they desire, such covenants being enforceable only by those in whose favor they run.
"A zoning ordinance restriction which permits less restrictive uses than those to which property is limited by a covenant in a deed or private agreement is usually held not to impair the efficacy of the latter."
*486 To the same effect see 14 Am.Jur., Covenants, Conditions and Restrictions, §§ 299, 338.
In Stephl v. Moore, 94 Fla. 313, 114 So. 455 (1927), the Florida Supreme Court held, in effect, that the right to enforce a restrictive covenant does not depend upon whether the covenantee will be damaged by the breach; that the mere breach is sufficient ground for injunctive relief. And in Dade County v. Thompson, 146 Fla. 66, 200 So. 212 (1941), said court held, in substance, that to justify the removal of restrictive covenants, of the character involved in this suit, it must be alleged and proven that conditions and circumstances existing at the time the restrictions were placed on the land have changed to the extent that the effect of the covenants has been brought to nought; that the test to be applied is whether or not the original intent of the parties as to the restrictive covenants can be reasonably carried out or whether the changed conditions are such as to make ineffective the original purpose of the restrictions.
In Batman v. Creighton, 101 So.2d 587 (Fla.App. 1958), the district court of appeal affirmed a decree refusing to eliminate a restrictive residential covenant on a busily traveled street in Tampa where commercial enterprises had sprung up. In Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, 82 So.2d 880 (Fla. 1955), the Florida Supreme Court enjoined the construction of a church in an area restricted by a comprehensive zoning ordinance to single-family dwellings, golf courses and parks. The court recognized that church activities should be "promoted and encouraged," but pointed out that the owner had full knowledge of the restriction when he bought the property. That condition exists in the instant case.
Holding, in line with the decisions, that such restrictions are generally enforceable between the parties even where there are changes in the surrounding areas, the question occurs as to what effect rezoning of the property might have on private restrictions and covenants where great changes have taken place in the surrounding area from that existing at the time the same were imposed. We think this question is directly answered in Wahrendorff v. Moore, 93 So.2d 720 (Fla. 1957). The appellants there sought cancellation of single-family residence restrictions on a lot facing U.S. Highway No. 1, and alleged by their complaint that over the years conditions had so changed that the restrictions had become an unjustifiable burden on the use of their lot which the county zoning board had in the meantime zoned for business uses. To support the alleged changed conditions appellants cited the general development in the area, the tremendously increased traffic on U.S. Highway No. 1, and the fact that a motel had been constructed in violation of the restrictions on a part of the subdivision. The Florida Supreme Court said, inter alia:
"It is true * * * that the law favors the free use of real estate and restrictions on usage will customarily be strictly construed. Nevertheless, such restrictive covenants are valid and will be recognized and enforced when established by contract between the parties involved."
The court below was most liberal in allowing testimony as to the change in character of the area surrounding the subject property since the imposition of the restrictive covenants. With such evidence, the jury was able to evaluate all the material facts touching upon the value of the subject property at time of taking. The compensation to be made to the landowner should be "the fair actual market value at the time of the lawful appropriation" (Sunday v. Louisville & N.R. Co., 62 Fla. 395, 57 So. 351 [1912]), which consists of the amount that a willing purchaser, under no compulsion to buy, would pay for the property. The condemning authority is called on to pay no more or less than any other purchaser on the free *487 and open market. City of Tampa v. Texas Company, 107 So.2d 216 (Fla.App. 1958).
The majority rule in this country, to which we adhere, is that full consideration should be given to restrictive covenants such as here involved without consideration as to the chance of removal thereof. Southern California Fisherman's Ass'n v. United States, 174 F.2d 739 (9th Cir.1949); In re: New York, W. & B.R. Co., 151 App.Div. 50, 135 N.Y.S. 234 (1912); Board of Education v. Kanawha & M.R. Co., 44 W. Va. 71, 29 S.E. 503 (1897); Central Land Co. v. City of Providence, 15 R.T. 246, 2 A. 553 (1886); First Parish in Woburn v. County of Middlesex, 73 Mass. 106 (1856); In re Albany Street, 11 Wend. 149, 25 Am.Dec. 618 (1834). Aside from the confusion a more elastic rule would engender, and the invasion of the private rights of persons not parties to a proceeding such as this, to eliminate such covenants would result in giving to the owner a windfall at public expense in that he would obviously be paid more than the property is worth in contemplation of the uses for which he purchased it.
We have carefully considered the isolated case of Board of County Commissioners v. Thormyer, 169 Ohio St. 291, 159 N.E.2d 612 (1959), cited by appellant, which dealt with a restriction against using the 20-acre tract of land except for a children's home and against selling it; but we conclude that is not sound precedent in this jurisdiction with respect to the effect of a restriction of the character involved by this appeal. To hold otherwise would operate to void the long-established market value approach as announced in Sunday v. Louisville & N.R. Co., supra, and would reject the governing principles laid down by the Florida Supreme Court in several other landmark cases, hereinafter discussed.
In Thormyer, part of the 20-acre parcel of property covered by the restrictive covenants had been improved with valuable buildings serving the restricted use. The condemnor contended that it was error to permit the jury to give the buildings a substantial value based on their use as a children's home (as the jury obviously did) and then give the land upon which the buildings rested a higher value than it would have had for use as a children's home. The appellate court noted the fact that only a relatively small portion of the tract being appropriated was occupied by or closely adjacent to the children's home buildings and said:
"In view of the physical facts indicated in the record, we believe the jury could have reasonably found that a substantial part of the land involved was not essential for maintenance of such children's home."
On that premise the court held that a charge requested by the condemning authority was inapplicable because it could have led the jury to erroneously conclude that such part of the land as was not essential to be used for the restricted purpose  a children's home  could not be valued as commercial property  its attained best use  if the buildings located on other portions of the land were valued for children's home purposes, the restricted use. The restrictions involved in that case, when considered in the light of the intended and actual use made of the property, did not exclude the ability of the grantee to utilize a part of it for its subsequently acquired highest and best use and by so doing better serve the purpose for which the restriction was initially imposed. Indeed, in Thormyer, at page 617, the court carefully rejected the proposition stated in the last sentence of the hereinabove-quoted charge in the case sub judice and observed that a rule which gives effect to said restrictions but allows for the consideration of the chance of their removal
"has a very serious disadvantage in that it greatly complicates the problem of determining the amount of the award by introducing an additional question to be considered by the jury in making that determination, i.e., the question as to the chance of a legislative or some *488 other elimination of the restrictions involved. How can a jury make any intelligent evaluation of such a factor? The answer is obvious. It cannot. In our opinion, the uncertainty and confusion that would be created by requiring a jury, in determining the amount of its award, to evaluate such a nebulous factor would outweigh any theoretical advantage * * *."
It must be concluded, of course, that "iffy" examples can be given to demonstrate that under some circumstances an injustice would result if the rule against consideration of the chance of removal of private restrictions is absolute in character. This case involves no such facts and it is idle to speculate on what an appellate court in this jurisdiction so confronted would hold. The within-quoted charge of the court which permitted the jury to consider the extraneous question of whether there existed a reasonable probability that the subject private restrictions might be removed by some future agreement of the parties or by some judicial decree in some far-off judicial proceeding cannot be said to have prejudiced the landowner in any particular; so the error in giving it, if any, and absent any assignment of error raising the issue, is immaterial to our disposition of the issue before us on this appeal. Our conclusion of affirmance does not depend on the accuracy of the charge given, to which appellee has not raised any objection.
In summary, the testimony proffered by appellant with respect to the change of condition and which we have held to have been properly excluded by the court is the only testimony in this case that would have tended to establish the inapplicability of the private restrictions here involved to the issue of value. Having held that the court did not err in excluding it, the last sentence of the quoted charge served no efficient purpose.
Board of Commissioners of State Institutions v. Tallahassee B. & T. Co., 100 So.2d 67 (Fla.App. 1958), and Swift & Company v. Housing Authority of Plant City, 106 So.2d 616 (Fla.App. 1958), are not helpful to the problem here because they deal with the right of the landowner to produce evidence on the highest and best use for which property is adaptable notwithstanding limitations on use imposed by zoning ordinances alone, the theory being that public officials in the exercise of police power will adapt such ordinances to changing conditions. There is no such compulsion or presumption attending the acts of private persons dealing with their private rights. Under the facts of this case, the trial court did not err in permitting the jury to consider the effect of the private covenants and restrictions in arriving at the value of the land being appropriated.
The second point of law to be considered concerns the refusal of the trial court to permit appellants' witness Taylor, who appeared solely as an expert on the issue of valuation, to give his opinion as to the cost and reasonable probability of the removal of the private covenants and restrictions by legal proceedings. Such testimony was properly excluded.
Such inquiry assumes, without any basis, that legal proceedings attacking the validity would be successful and that the costs, including counsel fees, could be stated with reasonable certainty. Not only was the witness not qualified to testify on these points, but such testimony is so speculative as to be inherently inadmissible. In Yoder v. Sarasota County, 81 So.2d 219 (Fla. 1955), the owner sought to prove the value of the property in the future, "if properly filled," for a particular use stated to be its most profitable use. The lower court held such evidence to be too speculative and on appeal the Supreme Court of Florida said:
"It is not proper to speculate on what could be done to the land or what might be done to it to make it more valuable and then solicit evidence on what it might be worth with such speculative improvements at some unannounced future date. To permit such evidence would open a floodgate of speculation and conjecture that would convert an *489 eminent domain proceeding into a guessing contest. See Orange Belt R. Co. v. Craver, 32 Fla. 28, 13 So. 444; Casa Loma Springs Development Co. v. Brevard County, 93 Fla. 601, 112 So. 60; Worth v. City of West Palm Beach, 101 Fla. 868, 132 So. 689; Doty v. City of Jacksonville, 106 Fla. 1, 142 So. 599."
Appellants' third point challenges the admission in evidence of testimony as to the purchase price paid for the property by appellants in 1960 or 1961, several years prior to the appropriation thereof. The great weight of authority and the rule in this jurisdiction is that where the time of the sale is not so remote as to destroy the evidentiary value of such testimony, it is largely within the discretion of the trial court to permit or exclude it. In Dickinson v. United States, 154 F.2d 642 (1946, C.A. 4th Va.), the challenged testimony related to a sale of the identical property six years prior to the date of taking. The appellate court noted that while the period of time was substantial, involving changed conditions of the times, these circumstances went to the weight rather than the admissibility of the evidence. That is true of the testimony here in question.
Finding no error, the judgment appealed is
Affirmed.
WIGGINTON, Acting Chief Judge (specially concurring).
I concur in the judgment of affirmance reached by the opinion authored by Judge Sturgis in this case. With the single exception hereinafter noted, I likewise concur in the legal conclusions reached by that opinion. My point of difference with the views expressed by Judge Sturgis arises in the holding hereinafter stated. In passing upon that aspect of the case dealing with the effect restrictive covenants have on the market value of land being acquired under the power of eminent domain, the majority opinion pronounces a principle of law which is admittedly unnecessary to a disposition of this appeal, but which opines:
"The majority rule in this country, to which we adhere, is that full consideration should be given to restrictive covenants such as here involved without consideration as to the chance of removal thereof."
I am in accord with that part of the above-quoted ruling to the effect that full consideration should be given by the jury to restrictive covenants such as here involved in determining the fair market value of the property to which the covenants apply. I do not agree, however, with the obiter dictum portion of the ruling to the effect that consideration should be given to such restrictive covenants for the purpose stated without also considering the chance or likelihood of their removal. In its charge to the jury the trial court in this case stated:
"The rezoning of property for use inconsistent with restrictive covenants, if any, on the property, does not by itself remove or release such restrictions. However, if it is shown by, and you find from the preponderance of the evidence, that it is reasonably probable that existing regulations or restrictive agreements prohibiting the use of the property for business purposes may be removed by agreement of the parties concerned, or by judicial decree, then the value of such property for business purposes may be considered along with all the other circumstances having reasonable relation to the value of the property."
It is my view that the quoted charge given by the trial court in this case is eminently correct as a matter of law. If the probability or likelihood that covenants restricting the use of land for purposes lower than its highest and best use are about to expire by their own terms or be removed, or may readily be removed either by agreement of the parties to such covenants, or by judicial *490 decree, the landowner whose property is sought to be taken by eminent domain should receive the benefit of such contingency, likelihood or probability. Land restricted by covenants for a stated use but later zoned for a higher and more profitable use has a higher market value if the restrictive covenants will expire within a period of weeks or months than would be the case if the restrictions will remain on the land for an extended period of time. By the same token, land restricted by covenants for residential purposes will have a higher value if it can be shown that such restrictions may be removed by the payment of money thereby freeing the land for business or commercial use. Under the willing buyer and willing seller test employed in determining the fair market value of property, a willing buyer would most certainly take into account the existence of such contingencies, likelihood or probability in forming a judgment as to the amount he would be willing to pay for the land in question. By the same token, an owner who is willing but under no compulsion to sell would likewise take such factors into account in determining the price at which he would be willing to sell his property. To hold otherwise would be entirely unrealistic and contrary to the most rudimentary business principles.
My conclusion stated above is in harmony with the decision reached by this court in Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Company,[1] the opinion in which was likewise authored by Judge Sturgis and which is as follows:
"There is respectable authority to the effect that the proper interests of the respondents can and should be resolved by the jury in condemnation. While no hard and fast rule may be established to govern evidence determining market value, all factors should be considered which would reasonably be given weight in negotiations between a willing seller and willing buyer. This excludes consideration of purely speculative uses for which the property might be adaptable but is presently unavailable, but permits consideration of uses to which the property is reasonably adaptable and for which it is, or in reasonable probability would become, available within a reasonable time. Orgel on Valuation Under Eminent Domain, Volume 1, paragraph 30, p. 141. To warrant admission of testimony as to the value for purposes other than that to which the land is being put, or to which its use is limited by ordinance at the time of the taking, the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time, (3) that the market value of the land has been enhanced by the other use for which it is adaptable.
"It is said in Nichols on Eminent Domain, Second Edition, Volume 1, p. 166, § 219, `When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.' To the same effect see City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 814; United States v. 3969.59 Acres of Land, D.C., 56 F. Supp. 831; Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206."
For the foregoing reasons I am unable to agree with the part of the majority opinion hereinabove noted. In all other respects I am in full accord.
JOHNSON, J., concurs.
NOTES
[1] Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Company, (Fla.App. 1958) 100 So.2d 67. See also Swift & Company v. Housing Authority of Plant City, (Fla.App. 1958) 106 So.2d 616.