PER CURIAM.
The appellant was the plaintiff below, and sought to have a tax assessment made on its property by the appellee, taxing authorities, set aside, along with other appropriate relief. The trial court found in favor of the taxing authorities and denied the relief requested.
The sole question on appeal is whether the trial judge erred in adopting the appraisal of the appellee’s expert, Mr. Lum-mus, as the fair market value of plaintiff’s property for the year 1966.
The property in question contains two specific parcels, but we need focus attention on one only, that parcel being referred to as Tract A.[1] This is oceanfront property, presently zoned by the Bal Harbour Village Council for single family residence and private club use. In 1963, the land portion of Tract A (plus that of Tract E, see footnote 1, supra) was assessed at $223,000; in 1964, it was assessed at $446,000; and in 1966, it was assessed at $1,860,030. The assessments for the improvements on the property are not at issue, and we now proceed to examine the correctness of the defendant’s expert, Lummus.
Mr. Lummus was certainly qualified as an expert witness, and by no means are we demeaning his credentials. However, the substance of his testimony[2] showed the following: (1) that Lummus was of the opinion that the present zoning of the property for private club and single family residence was “unreasonable, terribly unreasonable” in light of the fact that the adjacent properties to either side were zoned for multiple use; (2) that the reasonable future use of the property would be that of multiple family dwellings, but would first necessitate a rezoning of the tract; (3). that such a rezoning was reasonably possible in the event that the property were sold; [3] (4) that the *430 property, if sold to a buyer anticipating a rezoning to enable said buyer to erect a multiple family dwelling, would bring about $4,000 per ocean foot, or, stated another way, that the fair market value of the property here in question was between 1.3 and 1.6 million dollars.
We hold that the court’s order based upon Lummus’ expert testimony was incorrect. Our decision is controlled by Williams v. Simpson, Fla.App.1968, 209 So.2d 262, which presented a very similar factual situation to the First District Court of Appeal. There, it was held that the county tax assessor’s expert witness’ appraisal, admittedly based on the subject property’s ultimate potential which the witness estimated would not be realized for about five years, and further based on the assumption that the property should and could be rezoned so as to effect such ultimate potential, was not competent evidence for determination of valuation for tax purposes. Moreover, as to Lummus’ assertion that two similar private clubs in the Miami area pay the same taxes as the adjacent hotel and apartment property, we take judicial notice that The Surf Club, Surfside, Florida, and The Bath Club, Miami Beach, Florida, are both presently zoned for multiple family occupancy (“RE” and “RT” respectively), thereby giving each of them the same tax status as their neighboring tracts. In conclusion then, we hold that Lummus’ testimony here was likewise based on such speculation and conjecture as to make his testimony incompetent as a basis for the court’s determination of proper valuation.
Section 193.021, Fla.Stat. F.S.A. was the basis for the Williams holding, supra, and that statute has been judicially examined before with regard to the prohibitions against the taxing authorities’ consideration of potential use. Walter v. Schuler, Fla.1965, 176 So.2d 81; Lanier v. Overstreet, Fla.1965, 175 So.2d 521; Homer v. Dadeland Shopping Center, Inc., Fla.App.1969, 217 So.2d 844; Staninger v. Jacksonville Expressway Authority, Fla.App.1966, 182 So.2d 483, 22 A.L.R.3d 950 (see Judge Wigginton’s specially concurring opinion, id. at 489). Admission by the trial court of such speculative testimony appears to have violated § 193.021(2) Fla.Stat. F.S.A.
We therefore hold that the court erred in entering the final judgment and decree being appealed, and remand the cause for determination of the assessment in accord with this opinion.
Reversed and remanded.

. Another small section of oceanfront property is also part of the main property in question in this case, and it is referred to in the record as “Tract E”. However, for simplicity’s sake, we will deem the entire oceanfront holding as “Tract A” although our holding is likewise applicable to all affected portions of the property.

. The trial court placed heaviest reliance on Lummus’ appraisal:
“THE COURT: I am prepared to make a ruling in favor of the County.
“I am satisfied that the plaintiff has not carried the burden here.
“I will tell you frankly that I was overwhelmed by Mr. Lummus’ .testimony. He has testified, and I must respect him as an authority, that, taking into consideration the so-called gamble of a zoning change, he felt the value was so much more than the 1966 value that I cannot see that the plaintiff has carried the burden. I do not think the plaintiff has brought enough before this Court to seek a change and I am going to deny it.”

.“Q Mr. Lummus, I would like you to tell His Honor what factors you took into consideration in arriving at your opinion as to the fair market value of Tract A.
“A Well, I took into consideration the reasonable future use of the property together with the probability of its enlargement of the operation of the present.
“In the first place, you get back to reasonableness. This is 400 feet. There are only two other pracels along there the same size and one of 600 feet. Well, for 240 people or 220 members to set aside 400 feet of the most valuable property along the oceanfront and depriving the city of the revenue that would go *430 with it, it isn’t like changing the pattern of the most attractive city. It is already patterned.
“Q Mr. Lummus, did you then consider the income which is being obtained from this property, in arriving at your figure?
“A I considered it. I read the interrogatories, but it is not set up as an income-producing property and certainly very little credence would be put to it.
“It is a tightly-held club operated to the whims of the people that live there and certainly it is one of the nicest places in the area, but even the yacht club — -Incidentally, at the yacht club you can get everything you can get on the ocean for a club for the people because the beach was gone to the east of this and of course I had knowledge of that and considered that, but it is just unreasonable to think that a group of 240 people or 840 people can set aside this much property and not be subjected to the same thing.
“The Bath Club pays the same taxes as the property north and south of it. The Surf Club — I have checked them all out —they pay exactly the same. Certainly, even with these restrictions, in my opinion, the property is worth $3,500 and someone would get it right quick.”