432 So.2d 108 (1983)
Franklin B. BYSTROM, Dade County Property Appraiser, Appellant,
v.
VALENCIA CENTER, INC., Appellee.
No. 82-1924.
District Court of Appeal of Florida, Third District.
April 26, 1983.
Rehearing Denied June 15, 1983.
*109 Robert A. Ginsburg, County Atty., and Stephen J. Keating, Asst. County Atty., for appellant.
Crofton, Holland, Starling, Harris & Severs and Charles Harris Titusville, for appellee.
Before SCHWARTZ, C.J., FERGUSON, J., and GOMEZ, HELIO, Associate Judge.
GOMEZ, HELIO, Associate Judge.
The Dade County Property Appraiser's 1980 ad valorem tax assessment on a parcel of Coral Gables property owned by Valencia Center, Inc. was reduced by the Property Appraisal Adjustment Board "PAAB", following the recommendations of a Special Master. The reduction was from $4,581,730.00 to $3,907,000.00, a reduction of more than ten percent.
The parcel of real property comprises one whole city block, of over three acres, extending from Andalusia Avenue to Valencia Avenue, and from Lejeune Road to Salzedo. It contains a Publix Supermarket, a number of other smaller stores, and parking for one hundred and seventy-seven vehicles. The property encompasses forty-eight (48) standard Coral Gables lots 25 feet wide, is zoned for commercial or highrise office up to 13 story buildings, and is under one single ownership; that of plaintiff/appellee, Valencia Center, Inc. "Valencia". The chief tenant, under a twenty-year-old lease very beneficial to itself, is Publix.
The Property Appraiser filed suit, pursuant to the requirement of Section 194.032(6)(a)(2), Florida Statutes (1979), which requires that suit be filed by the taxing official if the PAAB reduces the assessment by more than ten percent. The Property Appraiser at trial presented a prima facie case that the reduction produced a value below the "just value" required by the Article VII, Section 4, Constitution of the State of Florida (1968).
Defendant, Valencia, counterclaimed under Section 194.171, Florida Statutes (1979), claiming that the reduced assessment was still greater than "just value".
The State of Florida Department of Revenue was joined as a party defendant pursuant to Section 194.181(5), Florida Statutes (1979), and later moved to realign itself as a party plaintiff because it agreed with the Property Appraiser's position. Leave to realign itself was granted.
Trial was had, non-jury, and the court heard the testimony of experts for both sides. The court then rendered judgment in a manner which is challenged by both sides.
*110 Certain facts were not in dispute. Witnesses for both sides agreed that the supermarket and small stores (all one-story) and the parking lot constitute an underutilization and not the highest and best use of the property. The chief disagreement is whether Section 193.011(2), Florida Statutes (1979), requires the Property Appraiser to assess the property on the basis of its current use, even though the current use is not the highest and best use. The property owner, Valencia, also contends that the existence of a long-term lease should be considered in deciding what the highest and best use is, in terms of the cited statute, whereas the Property Appraiser contends that the existence vel non of a lease is irrelevant to the valuation of the fee simple plus improvements, which must be valued as though unencumbered.
A primary issue in this case is that Article VII, Section 4, Constitution of the State of Florida (1968) requires all property to be assessed at "just value". Just value, a legal term, is synonymous with "fair market value". Walter v. Schuler, 176 So.2d 81 (Fla. 1965). Fair market value is also a legal concept related precisely to the appraisal concept of "market value". No one in this case disputes this.
One of the problems raised in this case is the meaning and effect of Section 193.011(2), Florida Statutes (1979). That statute, entitled "Factors to consider in deriving just value," states:
In arriving at just valuation as required under § 4, Art. VII, of the State Constitution, the Property Appraiser shall take into consideration the following factors: ... (2) the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property.. .
If the Property Appraiser must not only consider, but also use the current use of the property as the highest and best use, there is an inevitable conflict with "fair market value" on all properties on which there is an underimprovement.
What a property is currently used "as" is often not the highest and best use. In the case sub judice, valuing the subject as a shopping center leads to a value less than fair market value, a fact which was agreed to even by Valencia's sole appraiser  witness, Carlton W. Cole.
Valencia's argument is that the language of Section 193.011(2), Florida Statute (1979), requires the Appraiser to apply criteria yielding a value less than fair market value. That desired result would interpret the statute as explicitly unconstitutional. Section 193.011(2), Florida Statute, must be read in harmony with Article VII, Section 4, Constitution of the State of Florida (1968).
The issue is not new. The testimony of the Appraiser was based on market evidence. Mr. Perez, the Land Division Supervisor, testified that he used a range of comparable sales, of similarly-zoned properties, and after considering all applicable methods of appraisal, he came to the conclusion that the income capitalization method was inappropriate for the subject property. The present highest and best use of the property, as evidenced by vacant land sales was as a site for highrise office development.
The guidelines set forth in Section 193.011, Florida Statute (1979), are of use especially to Property Appraisers where there is a lack of, or where there is inadequate market evidence. (This "market" evidence could be sales or income data.) Where there are sales, however, of comparable properties, the Appraiser must perform a standard appraisal using normal techniques. By doing this, he necessarily considers all, and uses some, of the factors set forth in Section 193.011, Florida Statutes, (1979). This "harmonizes" the statute with Article VII, Section 4, Constitution of the State of Florida (1968) and explains the applications of the otherwise "unconstitutional" statute.
Valencia goes further, though, and claims that the current lease between Valencia and Publix extends several years into the future and therefore, the highest and best use in "the immediate future" is as it is at present.
*111 This argument overlooks two things. First, the property assessed is the unencumbered fee simple. Although Valencia Center, the lessor, is the taxpayer, the assessment must include the interest of all the lessees; the whole "bundle of rights" in the real property. Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla. 1970); McNayr v. Claughton, 198 So.2d 366 (Fla. App. 1967). See also Staninger v. Jacksonville Expressway Authority, 182 So.2d 483 (Fla. 1st DCA 1966); Arnow v. Tax Assessor, 32 Fla. Supp. 106 (11th Cir.1968).
Secondly, if the lessor's interest in the property is reduced by virtue of a lease which is now disadvantageous to itself, it follows that the lessees' interests are all the more valuable. The present market would contemplate the totality of the interests and a willing buyer would offer a willing seller (or sellers) a figure based on the lowered value of the encumbered property to the lessor plus the increased value (a premium) for the interest of the lessees.
The Appraiser's job, however, is not to assess the bundle of rights in a piecemeal fashion. Carlton Cole, the appraiser who testified for the taxpayer, admitted (R.Vol. II, p. 86) that a fair market value appraisal of real property is of the fee simple unencumbered. The touchstone is the market, always; what a willing buyer would pay to a willing seller, neither party being under compulsion to buy or to sell.
In Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965) agricultural land owners challenged their tax assessments. The Tax Assessor had assessed the lands not on the basis of agricultural use, but had considered other potential land uses. (Id., at p. 522). The Supreme Court then stated (at p. 524):
By authorizing tax assessors to consider, as one of the factors "in arriving at a just valuation" of property, the use to which the property `can be expected to be put in the immediate future' (emphasis added in original) the Legislature has, under the familiar rule of expressio unius est exclusio alterius (emphasis in original) prohibited tax assessors from considering potential uses to which the property is reasonable susceptible and to which it might possibly be put in some future tax year or, even, during the current tax year. To be considered, the use must be expected (emphasis added in original) not merely potential or a "reasonable susceptible" type of use; it must be expected immediately, (emphasis added in original) not at some vague uncertain time in the future. The reason for the legislative policy was well-stated by Judge White in his scholarly dissenting opinion in Lanier v. Tyson, supra, 147 So.2d 365 [Fla.App. 1962], as follows:
`Assessed valuations of land based on estimates of its highest and best potential, as distinguished from present bona fide use, are bound to be largely conjectural; and when an assessor, contrary to legislative intent and direction, determines that land despite its present value [emphasis here added by the appellant herein] has a truly higher present value because of its potential for some "higher" purpose, he indulges in unwarranted speculation and does violence to the constitutional and statutory objective of just valuation.'
All the evidence of record not specifically found to be incompetent supported the Property Appraiser's contention that the present value of the subject land; not the potential future value, supported the official original tax assessment.
Williams v. Simpson, 209 So.2d 262 (1st DCA 1968) discussed Lanier v. Overstreet in detail. In Williams the assessment of agricultural land was admittedly based on an assumption of rezoning in the indefinite future. The tax assessor's appraisal considered the "future potential" of the property (209 So.2d 262, at 263). The court quoted the lengthy section (supra) from Lanier v. Overstreet and added (at p. 265):
This is not to be construed as holding that a present demand for the property in question generated by a future potential would not increase its present fair market value; for it would. However, there was no showing of the existence of any such demand here ... (emphasis added).
*112 That was precisely the point of the Property Appraiser's testimony, uncontradicted by any evidence accepted by the court below.
The Simpson court made this point abundantly clear. At p. 266, it added:
It is the tax assessor's position that the Williams property has already increased in value due to the existent and potential expansion of the adjoining business area, and this increase in value should be reflected in the assessment. This increase, if it actually exists, will be reflected by the current sale price of truly comparable properties and can in that manner by brought within the procedural framework of the statue [§ 193.021, Fla. Stat. (1963), the presecessor of the present § 193.011, Fla. Stat.]. Therefore, when the seven statutory guideposts are applied to the classic formula, "the amount a purchaser willing but not obliged to buy, would pay to one willing, but not obliged to sell," the result will include any actual increase in value due to present demand for comparable property even though this demand is stimulated by a future potential use. Such value relates to the date of appraisal  not five years thence.
The Simpson court's opinion contains the clearest explanation as to why present market values reflecting future potential uses indicate "just value," and are therefore good evidence for assessment purposes.
Williams v. Simpson, supra, was cited with approval by this Court in Dade County v. The Miami Herald Publishing Co., 285 So.2d 671 (Fla.App. 1973). After defining "fair market value" the Court added (at p. 673):
... This court has previously held that testimony of potential future use is speculative and conjectural and incompentent as proof of fair market value. Bal Harbour Club, Inc. v. Dade County, 222 So.2d 428 (Fla.App. 1969); see also Williams v. Simpson, supra; R-C-B-S Corporation v. Walter, 225 So.2d 426 (Fla.App. 1969). However, it has also been well-recognized that a potential future use to which a piece of property is presently adaptable and which creates a present market demand may validly serve as a basis for present fair market value. R-C-B-S Corporation v. Walter, supra; City of Tampa v. Colgan, supra [121 Fla. 218, 163 So. 577]; The Florida Supreme Court, in City of Tampa v. Colgan, stated:
`... Prospective value alone cannot be made the substantive basis of an assessment, but can be considered to the extent that it enters into, or is reflected in, present value... .'
The evidence presented to the lower court as to how the assessment was made came from Mr. Perez. He described how the subject property of 3.4 acres was valued:
... You would not find a piece of property in Coral Gables under one ownership that has that size... .
...[it] is all under one ownership, you would not get into an assemblage-type situation where you would buy land and pay an exhorbitant price to assemble land... It is ready to go. It could be developed to its highest and best use, which would be a thirteen-story highrise.
(R.Vol. II, p. 20-21). As many as five or six such buildings could theoretically be built on this large parcel, he testified. Across the street to the South, similarly-zoned, on a far smaller lot is a thirteen-story office building already constructed.
Concerning the crucial question of whether the assessment was of future potential value or present market value, Mr. Perez was quite clear. (R.Vol. II Perez, pp. 22-23):
... We went into the Coral Gables area and analyzed all the sales that occurred in relationship to the zoning requirements, what they could be used for, and the size. We found in our analysis that those sites that met the highrise criteria of 200 feet [setback requirements] or 20,000 square feet were going for much more money than those sites that did not meet that criteria (sic) ...
The smaller sites in the Gables were ranging anywhere from $25 to $35 a square foot for small sites that could not be used for highrises. The ones that could be used where ranging from $45 upward per square foot.

*113 After we made that determination we then analyzed all the subject property to determine which piece of property actually met the zoning requirement of 200 feet of frontage or 20,000 square feet.
To those properties we assigned a value which was $34.50 a square foot. There is a similar property which lies directly south of this subject property which is now a highrise office building site, which carries a value of approximately $35 a square foot. ..
Mr. Perez' testimony was unequivocal about present actual market value of the subject property. Moreover, there was no contrary testimony on that issue.
There is no evidentiary basis for the value determined by the PAAB. Where there was unrebutted testimony from Mr. Perez that the fair market value assessment was made using standard techniques and using valid comparable sales, the assessment presumed correct Powell v. Kelly, 223 So.2d 305 (Fla. 1969).
Accordingly the final judgment is reversed with instructions to reinstate the assessment of the Property Appraiser.
Having made this disposition it is not necessary to consider the cross appeal.