462 So.2d 92 (1985)
James L. RODEN, Property Appraiser of Polk County, and Hobson Strain, Tax Collector of Polk County, Appellants,
v.
GAC LIQUIDATING TRUST, Theodore Bollt, Richard H. Millen, and S.Z. Bennett, As Trustees, Appellees.
No. 83-2505.
District Court of Appeal of Florida, Second District.
January 9, 1985.
Rehearing Denied February 4, 1985.
*93 Michael D. Martin and Stephen M. Martin, Martin & Martin, Lakeland, for appellants.
Jack P. Brandon, Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., Winter Haven, for appellees.
DANAHY, Judge.
The property appraiser and the tax collector of Polk County appeal a final judgment setting aside the property appraiser's 1982 assessed valuation of the appellees' land and directing the appraiser to reassess that land in accordance with the findings of fact and conclusions of law set forth in the judgment. We reverse.
Between 1965 and 1969, GAC Corporation acquired substantial land holdings which include the property that is the subject of this suit. That property is referred to as River Ranch Acres. GAC Corporation registered the land with the then-existing Florida Installment Land Sales Board in accordance with law applicable at that time. Orders of registration were granted and GAC Corporation proceeded to market the land in one-and-one-quarter acre lots.
On October 1, 1980, GAC Corporation was reorganized under the bankruptcy laws and GAC Liquidating Trust (the Trust) was created. The Trust and its trustees were the plaintiffs in this case and are the appellees on this appeal.
In accordance with the bankruptcy reorganization, GAC Corporation transferred to the Trust all title to the remaining unsold parcels in River Ranch Acres. The purpose of the Trust was to liquidate these assets for the benefit of the creditors of GAC Corporation. The Trust presently owns 10,140 acres at River Ranch consisting of 8,112 one-and-one-quarter acre lots which are scattered and noncontiguous, giving a checkerboard appearance to the Trust property. The lots are unsold and unplatted. There are no utilities, dedicated roadways or other improvements serving the lots. Recorded right-of-way easements allow access to the lots, but these easements are unimproved. The parties concede that a purchaser of a parcel at River Ranch Acres would have to take a surveyor with him to find his parcel.
Appellant Roden, the property appraiser of Polk County, assessed the Trust property for the tax year 1982 at $800 per acre, the same assessment placed on the property for each of the prior eight years. The Trust brought suit challenging the validity of that assessment and the matter was heard nonjury. The Trust's appraiser, Mr. Morse, reported comparable sales data in River Ranch Acres showing a low price of $960 per acre for nonroad frontage and a high price of $2,600 for road frontage. Morse, however, disregarded comparable sales and valued the property at $164.16 per acre. He took the Polk County Wetlands Ordinance into consideration. This ordinance prohibits development of more than ten percent of wetlands area. He also considered a Polk County ordinance which prohibited the issuance of a building permit for a lot not on a public road. He said that these were his major considerations.
The property appraiser presented Edwin Coleman as his witness. Coleman is the supervisor of the Real Estate Department of the Polk County Property Appraiser's Office. Coleman testified that there have been thousands of parcels sold at River Ranch Acres for prices ranging from $300 to $2,500 per acre. He said that recent sales to in-state owners show a price of around $960 per acre from which was deducted realtor's fees and costs of sale, reducing the figure to $816 per acre. Coleman confirmed that the assessment value of $800 per acre was based on these sales, which he viewed as comparable.
Both Morse and Coleman agreed that the highest and best use of the property was recreational, including hunting, fishing and camping. It was for this reason, according to Coleman's testimony, that he did not take into consideration the County building ordinance or the wetlands ordinance. In *94 his opinion, those restrictions on building were irrelevant to property which could only be used for recreational purposes.
The trial judge concluded that the sales being utilized by the property appraiser as comparable sales were not in fact comparable because they represented prices paid by persons who thought they were acquiring the rights to hunt the entire River Ranch acreage, when in fact no one was in a position to grant such hunting rights. The trial judge noted that the trust could not represent to prospective purchasers that they were acquiring any rights to hunt other than on their own property. The trial judge faulted the property appraiser for basing his appraisal primarily on those comparable sales and also for not taking into consideration (1) that the orders of registration issued to GAC Corporation had not been transferred to the Trust; (2) that there was a restriction on the issuance of building permits under a Polk County ordinance; (3) that Polk County had a wetlands ordinance restricting development of wetlands areas; and (4) that the Declaration of Trust controlling the activities of the trustees in liquidating the Trust assets did not contemplate that the Trust would market the property to individual purchasers on a per lot basis. The trial judge acknowledged that this last limitation was produced by federal income tax laws, which would penalize the Trust if it engaged in the business of selling individual parcels. Thus, in the view of the trial judge, the Trust was limited to a sale in bulk.[1]
Section 193.011, Florida Statutes (1983), lists the factors which a property appraiser is to take into consideration in arriving at just valuation for ad valorem tax purposes. The first of these is the present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length. The other factors listed in the statute are the highest and best use, location, quantity or size, cost, condition, income, and net proceeds of the sale of the property. A property appraiser is required to consider each factor enumerated in the statute, although he may assign to each factor such weight as he deems proper. Straughn v. Tuck, 354 So.2d 368 (Fla. 1977).
Mr. Coleman of the Property Appraiser's Office testified in a conclusory way that all of the statutory factors were considered in arriving at the assessed value of the appellees' land. His testimony touched on the various factors, showing that the property appraiser did consider the highest and best use, which is recreational, and the location, quantity and size of the property. He also took into consideration the condition of the property. Cost, income, and net proceeds from the sale of the property as received by the seller were considered but not taken into account as not being applicable in this particular situation.
We are persuaded that the property appraiser proceeded properly in accordance with the statute and his assessment should have been upheld. We believe the best indicator of the value of the property were the sales of comparable parcels in River Ranch Acres and that these were properly considered by the property appraiser to be comparable sales. As Mr. Coleman put it, "I think that in any circumstance we can't discount the fact that people are paying money for the property. And as long as they are paying money for the property, it must have some value. I think that our office is  the dictates of the law are such that we must follow what the market value of the property is, and if we have enough *95 sales and information to go on, that's certainly what we try to do."
We find nothing in the statute which requires the property appraiser to take into consideration the tax consequences to the property owner which might persuade the property owner to choose one avenue of disposing of the property over another. Thus, we do not place importance on the tax considerations pertaining to the Trust which might make it more advisable to the trustees to sell the property in bulk rather in parcels. Further, we see no reason why the building permit ordinance and wetlands ordinance should enter into the determination of assessed valuation of property which everyone agreed could only be used for recreational purposes. Finally, we find nothing in the record establishing that the Trust could not acquire the benefit of GAC Corporation's land registrations; there is no indication that the trustees had made any serious effort in that regard, possibly because of their desire to sell the property in bulk if possible.
The burden was on the appellees to establish by competent and substantial evidence that the property appraiser did not follow section 193.011 in determining the assessed valuation of the appellees' property. In our view, the appellees failed to meet that burden. Accordingly, we reverse with directions that final judgment be entered for the appellants.
REVERSED AND REMANDED.
SCHEB, A.C.J., and SCHOONOVER, JJ., concur.
NOTES
[1] We note without comment that on February 9, 1984, the bankruptcy judge issued an order declaring that the Trust succeeded to the rights of GAC Corporation in the orders of registration granted for the lots in River Ranch Acres and directing that those orders of registration be transferred to the Trust forthwith. That order also authorized the trustees to sell the River Ranch property "in bulk, in whole or in part" for a price not to exceed $1,950 per one-and-one-quarter acre lot except for lots adjacent to public roads or located on the third tier from a public road and which have access thereto.