497 So.2d 1299 (1986)
SPANISH RIVER RESORT CORPORATION, a Florida Corporation, Spanish River Management Corporation, a Florida Corporation, and Spanish River Resort and Beach Club Association, Inc., a Florida Corporation Not-for-Profit, Appellants,
v.
Rebecca WALKER, As Palm Beach County Property Appraiser, Allen C. Clark, As Palm Beach County Tax Collector, and Randy Miller, As Executive Director of the Florida Department of Revenue, a State Agency, Appellees.
No. 85-1645.
District Court of Appeal of Florida, Fourth District.
November 19, 1986.
*1300 Robert S. Goldman of Messer, Vickers, Caparello, French & Madsen, Tallahassee, for appellants.
Willa A. Fearrington, West Palm Beach, and Gaylord A. Wood, Jr., Fort Lauderdale, for appellee-Walker.
Cone Wagner Nugent Johnson Roth & Romano, P.A., and Larry Klein of Klein & Beranek, P.A., West Palm Beach, for appellee-Allen C. Clark.
Jim Smith, Atty. Gen., and J. Terrell Williams, Asst. Atty. Gen., Tallahassee, for appellee-Miller.
James M. Spoonhour of Lowndes, Drosdick, Doster, Kantor & Reed, Orlando, amici curiae.
*1301 LETTS, Judge.
Before us is the question of whether a property appraiser can assess each individual time-share unit for statutory ad valorem taxation purposes or whether that assessment must be limited to the value of the entire unit as if it were still an ordinary condominium apartment not subject to time-sharing. The trial court found that each time-share unit could be separately assessed because each owner enjoyed "all of the sticks which constitute the bundle of rights that is fee ownership of real estate ... capable of being separately conveyed and assessed." We affirm.
The development in question involves an eleven-story building containing seventy-two units, converted in 1980 to a condominium authorizing time-sharing pursuant to section 718.103(19), Florida Statutes (1983). There is no question but that the conversion involved a fee time-share project rather than the non-fee alternative, the latter not pertinent here. Not all of the units in the building were converted to time-share estates; some remain as standard condominium units. The time-share unit owners insist that the appraisals should have been limited to the land, building and improvements thereon (i.e., each apartment as a whole) pursuant to section 192.001(14), Florida Statutes (1983). Accordingly, they claim that the appraiser's decision to base the assessments on the listed asking prices for individual unit "weeks" was erroneous because it altered the essential character of the ad valorem tax and the basic character of real estate, thus disregarding the constitutional standard of "just valuation." In support of this contention, the unit time-share owners cite, as an example, apartment 1006, in which no time-share estates have been created, which was assessed for $25,000. The physically identical adjoining unit 1007, in which fifty-one time-share estates have been offered,[1] was assessed for $236,634.
There are several sections of the Florida Statutes which are applicable to the matter at hand, but we are of the opinion that the polestar must be section 192.037(1) and (2), Florida Statutes (1983), which states:
192.037 Fee time-share real property; taxes and assessments. 
(1) For the purposes of ad valorem taxation and special assessments, the managing entity responsible for operating and maintaining fee time-share real property shall be considered the taxpayer as an agent of the time-share period title-holder.
(2) Fee time-share real property shall be listed on the assessment rolls as a single entry for each time-share development. The assessed value of each time-share development shall be the value of the combined individual time-share periods or time-share estates contained therein.
Florida's constitution provides that "no tax shall be levied except in pursuance of law." Article VII, section 1(a), Florida Constitution. As a result, property taxes are of a purely statutory nature which can be levied, assessed and collected "only by the express method pointed out by statute." State ex rel. Seaboard Air Line Railroad v. Gay, 160 Fla. 445, 35 So.2d 403 (1948). In view of the statute quoted above, it would appear that an ad valorem tax may be assessed against time-share estates. However, the time-share unit owners disagree and point to the second sentence of the particular section, quoted above, which for emphasis we again repeat:
THE ASSESSED VALUE OF EACH TIME-SHARE DEVELOPMENT SHALL BE THE VALUE OF THE COMBINED INDIVIDUAL TIME-SHARE PERIODS OR TIME-SHARE ESTATES CONTAINED THEREIN.
As the time-share unit owners see it, this language calls for the assessed value of the development, i.e., land and buildings (in other words, the entire units unaffected by subdivision into time-share weeks). They further argue that their interpretation is bolstered by the use of the word value in the singular and that only their interpretation *1302 can conform to section 192.001(14), Florida Statutes (1983), which provides:
"Fee time-share real property" means the land and buildings and other improvements to land that are subject to time-share interests which are sold as a fee interest in real property.
Nonetheless, we do not agree with the time-share unit owners' contention. Section 192.037(2) must be read in pari materia with all of the other subsections in section 192.037, particularly the preceding subsection (1). Subsection (1) provides that the managing entity shall be considered the agent for all the time-share unit holders, so that, as subsection (2) contemplates, only a single entry for each development need appear on the assessment rolls. However, Subsection (2) quite clearly goes on to provide that that single assessment entry shall be the value of the combined individual time-share periods. While we are not very impressed with this statutory choice of words, we are confident that the language employed contemplates that the single assessment entry is to reflect the sum of the individual assessments of each time-share unit. Our conclusion is bolstered by all the other statutory enactments or amendments which took place during this same period. For example, there are now at least thirteen separate occasions on which the term "fee" has been engrafted into the applicable statutes. In addition, section 721.03(5), Florida Statutes (1983), now clearly specifies that "the treatment of time-share estates for ad valorem purposes and special assessments shall be as prescribed in Chapters 192 through 200." This quoted language, appearing contemporaneously with the enactment of section 192.037, is an unmistakable expression of the legislature's intent to bring individual time-share units or "weeks" within the ambit of ad valorem taxation. The Legislature is presumed to know the meaning of words which have accepted meaning and usage which it adopts for statutory use. See Thayer v. State, 335 So.2d 815 (Fla. 1976). In this context, the use of the word "fee" on so many occasions cannot be ignored. We quote with approval from the final judgment below:
C. The interval owner at Spanish River has all of the "sticks" which constitute the "bundle of rights" that is fee ownership of real estate: the complete right to use (or not to use) the property during the period of ownership; the right to exclude others during that period, and the right to mortgage, lease, sell, bequeath or give away the time-share estate. Every time share period is a unique ownership, even if it is located in part within the same physical space as the other time share estates in the same apartment. In short, it is a parcel of real estate.
In this same vein, we find it appropriate to comment on the posture assumed by the developers themselves in pursuit of sales of these units:
1. In the sales brochure is found the following excerpt:
It's fantastic to think your family could be guaranteed a tranquil tropical vacation home, forever, at a price that doesn't keep climbing year after year ... Unlike traditional real property concepts, interval ownership is multidimensional. You buy property and time ... The person who buys at Spanish River Resort is an owner with deed, and full rights of ownership. You may lend your property, sell it, rent it, or give it away during the weeks you own it. Or you can keep it forever.
2. Standard warranty deeds were used to transfer the title to each individual time-share unit and documentary stamps were affixed thereto in the full amount of the purchase price being paid for each individual time-share unit.
3. An owner's policy of title insurance was provided in the full amount of the purchase price for each time-share unit sold upon which institutional financing was offered if required.
Turning next to the question of whether the property appraiser's valuation of the time-share units was "just," we are of the opinion that it was. All sides agree, *1303 and this court has held, that just valuation, as required by Article VII section 4 of the Florida Constitution, and market value are synonymous. See State Dept. of Revenue v. Markham, 426 So.2d 555, 557 n. 2 (Fla. 4th DCA 1982).
The time-share unit owners insist that the subject assessments are both unjust and not representative of fair market value. As they see it, the property appraiser has failed to properly consider the eight criteria set forth in section 193.011, Florida Statutes (1983), necessary to arrive at a "just" valuation. In particular, they refer to the eighth criterion which directs the appraiser to take into consideration "the costs of the sale." We note first that while all eight criteria must be "considered," any one of them may be "discarded entirely where they are not under the circumstances probative of present value." Vero Beach Shores, Inc. v. Nolte, 467 So.2d 1041, 1042 (Fla. 4th DCA 1985). As it was said in Bystrom v. Valencia Center, Inc., 432 So.2d 108 (Fla. 3d DCA 1983), pet. for rev. den., 444 So.2d 418 (Fla. 1985):
The guidelines set forth in Section 193.011, Florida Statute (1979), are of use especially to Property Appraisers where there is a lack of, or where there is inadequate market evidence. (This "market" evidence could be sales or income data.) Where there are sales, however, of comparable properties, the Appraiser must perform a standard appraisal using normal techniques. By doing this, he necessarily considers all, and uses some, of the factors set forth in Section 193.011, Florida Statutes, (1979).
Id. at 110.
In the instant case, the time-share unit owners cite excessive costs of sale totalling 55% of the purchase price and argue that these costs must be taken into consideration to reach fair market value. To this end, they urge the adoption of the "discounted sellout" method of appraisal which calls for the estimation of gross revenues over the six-year sellout period minus the anticipated expenses, then discounted to present value. This discounted sellout approach has been rejected by several appellate courts as "too speculative" and we cannot fault the trial judge for so holding in the instant case. See St. Joe Paper Co. v. Adkinson, 400 So.2d 983 (Fla. 1st DCA 1981); Muckenfuss v. Miller, 421 So.2d 170 (Fla. 5th DCA 1982); Roden v. G.A.C. Liquidating Trust, 462 So.2d 92 (Fla. 2d DCA 1985).
Further, one reason given by the developers for the unfairness of the assessments is hardly the fault of the property appraiser. In the time-share unit owners' brief, it is argued that upon resale the "week" unit owners will never be able to recoup the original purchase price which latter "[did] not represent fair market value but may [have been] inflated by the developer's cost of attracting potential buyers." To be sure, the promotional material did not advise the potential buyers of this dismal forecast when they were being persuaded to purchase their time-share "weeks." Regardless, the property appraiser can hardly be faulted for taking the original sales prices prominently into account when assessing the time-share units. See Vero Beach Shores, Inc. v. Nolte, 467 So.2d 1041, 1042 (Fla. 4th DCA 1985). That the developers overcharged the purchasers does not make the latter unwilling buyers and most certainly does not cause the developers to be unwilling sellers. Arrival at the value of property is a matter of administrative discretion to be exercised by a property appraiser which the courts should not disturb unless it has been fraudulently or illegally exercised. Powell v. Kelly, 223 So.2d 305 (Fla. 1969). Here the appraisal was largely based on the purchase prices of the original sales  a time honored approach consistent with the requirement that all property must be assessed at "100% valuation rate." District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973). As yet, the assessments for these time-share units are not based on resales because there have been very few, if any. If a pattern of lower resale prices emerges, the appraiser will have to react accordingly and reassess *1304 downwards. No such pattern has been established in the record now before us and speculation as to the possible purchase price of future resales is hardly "probative of present value." See Vero Beach v. Nolte, at 1042.
Moreover, as succinctly stated in a recent excellent law review article on the subject:
Florida's time-share assessment statute does not specifically recognize the marketing costs associated with selling time-share properties. Florida Statute section 193.011(8), however, does specify that the property appraiser must consider the net proceeds derived from the real property sale after "deduction of all of the usual and reasonable fees and costs of the sale." Such usual and reasonable fees and costs typically include reasonable attorney's fees, broker's commissions, documentary stamp costs, survey costs, appraisal fees, and title insurance costs. Internal expenditures such as marketing costs are generally not included within the scope of this section. Thus, the Florida real property assessment statutes do not recognize the exorbitant internal expenditures incurred while marketing time-share properties (emphasis supplied).
Note, Ad Valorem Taxation of Time-Share Properties: Should Time-Share Estates be Separately Assessed and Taxed? 37 U.Fla. L.Rev. 421, 436 (1985).
Finally, on the appraisal question, the "cost of the sale" criterion should not be overemphasized. If comparable sales establish the market value of two identical properties, we know of no court decision which would allow the buyer of the first parcel to insist on a value 55% less than the second, because the seller of the former parcel chose to expend an inflated percentage sum to market his property in order to obtain a purchaser. This eighth criterion in section 193.011 must be read in pari materia with the first which limits the consideration of sales costs to "reasonable fees and costs of purchase." (Emphasis supplied.)
Regarding the constitutional issues presented, we choose not to discuss these at length. Suffice it to say, we do not find the relevant statutes unconstitutional under the facts of this case and we adopt the reasoning of the trial judge set forth hereafter, secure in the knowledge that any infirmities, both in his reasoning and in ours, will be scrutinized by the Supreme Court to which we propose to certify the question here presented.
The venerable trial judge ruled as follows:
CONSTITUTIONAL ISSUES
5. The Legislature has declared that the most efficient way to collect taxes on time share estates is for the Property Appraiser to make one listing on the tax rolls of the combined values of the time share estates, and simultaneously to notify the managing entity of the proportions to be used in allocating this aggregate number to the owners of the time share estates themselves. The Court finds that the Legislature has the broadest freedom in classification, particularly where matters of taxation are involved,. and that the method chosen by the Legislature for time share properties is reasonable, since it closely tracks the method already established by Spanish River to accomplish the efficient collection of taxes and maintenance fees. No additional costs are incurred by including an item in the maintenance bills for property taxes. The Court finds that an administrative nightmare and great expense would result were the Property Appraiser and Tax Collector required to send individual notices of assessed valuation (Truth In Millage notices) and tax bills to the time-share estate owners at Spanish River. The managing entity is in a perfect position to represent the owners of the time share estates and to collect efficiently and effectively the taxes due for the time share estates.
6. The Court finds that Section 192.037(2), Florida Statutes, is clear and unambiguous, and is somewhat akin to 718.020, *1305 Florida Statutes, dealing with the assessment of separate ownership of condominium parcels. The contention of the Plaintiffs that the development and marketing costs should be deducted from the market value pursuant to criterion (8) of Section 193.011, Florida Statutes, (Factors to consider in deriving just valuation. ) is untenable.
7. The Court finds that the Legislature recognized that individual time share estates have different values according to the season of the year, and required the Property Appraiser to separately value each time share estate and notify the Managing Entity of the proportion of the one tax notice attributable to each owner's property. If it were the Legislature's intention that there be an appraisal of "one property," as suggested by Plaintiffs, then there is no reason that the taxes should not be divided among the owners equally as provided in the Declaration of Condominium. Even were the taxes not to be paid, the protection of Chapter 197, Florida Statutes, (Tax Collections, Sales, and Liens), including the procedure to obtain a partial release from a tax certificate under Section 197.156 of the chapter, applies not only to the managing entity but also to the individual time share estate owners.
CONCLUSIONS OF LAW
... .
8. Florida law requires extremely strong proof to set aside a statute as unconstitutional. Every presumption will be indulged in, in favor of the constitutionality of a statute, and it must be proved to be invalid "beyond a reasonable doubt." Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965) Particularly in matters involving taxation, the Legislature is afforded the greatest discretion in matters of classification. See, e.g., Markham v. Yankee Clipper Hotel, Inc., 427 So.2d 383 (Fla. 4th DCA 1983). The Court finds that section 192.037, Florida Statutes, is constitutional in all respects. Until modified or substantially changed by the Legislature, the Property Appraisers must follow this procedure for appraising time share estates and the language in 192.037(2), Florida Statutes. The Court declines to modify the statute by judicial fiat. This is so even though the value of the combined time share periods exceeds the just value of a comparative unit of a development that is not subject to the time share system of ownership. Although there appears to be an obvious and tremendous discrepancy between bottom line values of a non-time share unit and the sum of the assessments of fifty-one time share estates, the court finds that such a procedure is constitutional under the existing statutory law and case law. Subsections (4) and (9) of section 192.037, Florida Statutes, provides sufficient safeguards for notice and due process for all taxpayers, since notice to an agent is legally notice to the principal, and the managing entity stands in a fiduciary relationship to the time share estate owners. Each owner of a time share estate is accorded all of the administrative and judicial remedies and protections of law, especially if an application is made for a tax deed after non payment of taxes. Accordingly, the Court finds Section 192.037, Florida Statutes constitutional in all respects.
... .
11. The Property Appraiser's methodology has not had the effect of creating an invalid classification of real property. The Spanish River time share properties were not appraised differently than any other time share properties in Palm Beach County. See, Just Valuation & Taxation League v. Simpson, 209 So.2d 229 (Fla. 1968).
We are not unaware of the very recent Fifth District case High Point Condominium Resorts, Ltd. v. Day, 494 So.2d 508 (Fla. 5th DCA 1986), holding that section 192.037 is unconstitutional. However, we do not agree that the method employed for collecting taxes from time-share fee owners is substantially different from, or less protective than, other owners of real property. The cumulative effect of sections 192.037, 197.502 and Chapters 194 and 197 *1306 is to provide time-share fee owners with the same protections as other owners of real property in the assessment and collection of ad valorem taxes. Notwithstanding the fact that time-share fee owners are not listed as taxpayers on the assessment roll, section 192.037(4) unequivocally provides that all rights and privileges afforded property owners by Chapter 194 as to controlling or appealing assessments shall apply both to the managing entity and to each time-share fee owner. In addition, section 192.037(9) allows the time-share fee owner to receive the protections afforded by Chapter 197 by application made pursuant to section 197.502. The requirement that the property owner be on the tax roll for the year in which the property was last assessed in order to fall within the language in section 197.502(4)(f) applies to both time-share fee owners and other owners of real property alike. Therefore, we are of the opinion that section 192.037 does not deprive the time-share fee owners of due process and equal protection and is constitutional.
In conclusion, believing this matter to be of great public importance, we certify the following questions to the Supreme Court:
CERTIFIED QUESTIONS
1. UNDER THE FACTS OF THIS CASE, WAS THE PROPERTY APPRAISER CORRECT IN ASSESSING EACH INDIVIDUAL TIME-SHARE "WEEK" OR SHOULD THAT ASSESSMENT HAVE BEEN RESTRICTED TO THE FAIR MARKET VALUE OF THE ENTIRE CONDOMINIUM APARTMENT UNIT WITHOUT REFERENCE TO ITS SUBDIVISION INTO TIME-SHARE INTERESTS?
2. ARE WE CORRECT IN UPHOLDING THE CONSTITUTIONALITY OF SECTION 192.037?
AFFIRMED.
WALDEN and GUNTHER, JJ., concur.
NOTES
[1] Corresponding to fifty-one weeks at one week each.