524 So.2d 415 (1988)
OYSTER POINTE RESORT CONDOMINIUM ASSOC., INC., Etc., et al., Petitioners,
v.
David C. NOLTE, Etc., et al., Respondents.
OYSTER BAY II OWNERS' ASSOC., INC., Etc., et al., Petitioners,
v.
David C. NOLTE, Etc., et al., Respondents.
DRIFTWOOD MANAGEMENT CO., INC., Etc., et al., Petitioners,
v.
David C. NOLTE, Etc., et al., Respondents.
Nos. 69794 to 69796.
Supreme Court of Florida.
March 31, 1988.
Rehearing Denied June 1, 1988.
Michael O'Haire of Smith, O'Haire, Quinn & Garris, Vero Beach, for Oyster Pointe Resort Condominium Association, Inc. and Oyster Bay II Owners' Association, Inc.
James S. Byrd, Jr. of Baker & Hostetler, Orlando, for Driftwood Management Co., Inc.
Robert Jackson, Vero Beach, for David C. Nolte.
Miles B. Mank, II, Vero Beach, for Gene E. Morris.
Robert A. Butterworth, Atty. Gen. and J. Terrell Williams, Asst. Atty. Gen., Tallahassee, for Department of Revenue.
*416 KOGAN, Justice.
This consolidated appeal is from decisions of the Fourth District Court of Appeal, 497 So.2d 740 and 1306 (1986), declaring section 192.037, Florida Statutes (1983), valid upon the authority of Spanish River Resort Corp. v. Walker, 497 So.2d 1299 (Fla. 4th DCA 1986). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The properties in this consolidated appeal are four condominium developments consisting of fee time-share estates known as Oyster Pointe Resort, Oyster Bay II, Driftwood Vacation Villas, and Driftwood Ocean Villas. The fee time-share units here are sold as a term of years followed by a tenancy in common in the real property. The units are then transferred by warranty deed to each time-share owner, giving each owner an undivided interest in the subject property. For the year 1983, the property appraiser valued each time-share unit based on a market approach to value, utilizing comparable sales data of the other individual fee time-share estates. The assessment of the time-share units resulted in a valuation that was increased more than tenfold over the prior year and over identical adjoining units, the ownership of which had not been fragmented. The property appraiser based his actions on his interpretation of section 192.037(2), Florida Statutes (1982), effective January 1, 1983. He read the statute as requiring him to appraise each individual time-share week and then to combine them into a single listing on the tax roll. The tax bills for the individual time-share units were sent to the managing entity as agent for the time-share unit owners.
The uncontroverted testimony at trial was that the sales price of the time-share units included not only the costs attributable to real property and tangible personal property, but many other cost components typical of and peculiar to time-share estates (i.e., marketing costs and other intangible values such as the right to participate in an exchange network of resorts and a reservation and front-desk system, together with other services and amenities ordinarily associated with a hotel).
All three cases were consolidated for trial. The trial court by amended final judgment approved the assessment process followed by the property appraiser. The district court affirmed the trial court and, on the authority of Spanish River, expressly found section 192.037(2) constitutional.
Three of the issues posed by each case are identical: (1) whether section 192.037 is constitutional on due process and equal protection grounds; (2) whether the property appraiser correctly assessed the time-share units under section 192.037(2) by assessing each individual time-share week; and (3) whether the property appraiser, when assessing time-share units under the market value approach, must net from the sales price all elements of the purchase price other than its real property component. The fourth issue raised, pertinent only to the Oyster Pointe Resort case, is whether all fifty-two units of the Oyster Pointe Resort should be assessed for 1983 ad valorem tax purposes pursuant to the provisions of section 192.037.
In our recent opinion of Day v. High Point Condominium Resorts, Ltd., 521 So.2d 1064 (Fla. 1988), we addressed the first issue presented to us in this appeal. We found section 192.037 constitutional on both due process and equal protection grounds. We see no need to engage in any further discussion on this issue, and for the reasons expressed in Day we uphold the validity of section 192.037.
The second issue before us questions whether the property appraiser correctly assessed the time-share units under section 192.037(2) by assessing each individual time-share week. Section 192.037(2) states:
Fee time-share real property shall be listed on the assessment rolls as a single entry for each time-share development. The assessed value of each time-share development shall be the value of the combined individual time-share periods or time share estates contained therein.
The time-share unit owners argue that the language of subsection (2) directs the property appraiser to assess the time-share development *417 as a whole (i.e., the land, buildings and improvements thereon) unaffected by its subdivision into time-share weeks. To support their interpretation the petitioners make two points. In the first sentence of section 192.037(2), the unit to be assessed is referred to as "fee time-share real property," defined in section 192.011(14), Florida Statutes (1982), as "the land and buildings and other improvements to land that are subject to time-share interests which are sold as a fee interest in real property." In the second sentence of section 192.037(2), the word "value" is used in the singular. Thus, the petitioners contend, it is obvious the legislature intended the valuation of the time-share development as a single unit with an allocation of the total value among the time-share ownership interests therein, rather than a valuation of each individual time-share unit with the resulting individual values combined to derive the value of the time-share development as a whole.
This argument was expressly rejected by the Fourth District Court of Appeal in Spanish River. We are also unpersuaded by this argument and quote with approval the district court's analysis of the pertinent provisions of section 192.037:
Section 192.037(2) must be read in pari materia with all of the other subsections in section 192.037, particularly the preceding subsection (1). Subsection (1) provides that the managing entity shall be considered the agent for all the time-share unit holders, so that, as subsection (2) contemplates, only a single entry for each development need appear on the assessment rolls. However, Subsection (2) quite clearly goes on to provide that that single assessment entry shall be the value of the combined individual time-share periods. While we are not very impressed with this statutory choice of words, we are confident that the language employed contemplates that the single assessment entry is to reflect the sum of the individual assessments of each time-share unit. Our conclusion is bolstered by all the other statutory enactments or amendments which took place during this same period. For example, there are now at least thirteen separate occasions on which the term "fee" has been engrafted into the applicable statutes. In addition, section 721.03(5), Florida Statutes (1983), now clearly specifies that "the treatment of time-share estates for ad valorem purposes and special assessments shall be as prescribed in Chapters 192 through 200." This quoted language, appearing contemporaneously with the enactment of section 192.037, is an unmistakable expression of the legislature's intent to bring individual time-share units or "weeks" within the ambit of ad valorem taxation... . In this context, the use of the word "fee" on so many occasions cannot be ignored.
497 So.2d at 1302 (emphasis in the original). In light of the foregoing analysis, we conclude the property appraiser is authorized to assess the time-share units under section 192.037(2) by assessing each individual time-share week.
The third issue presented requires us to discuss whether the property appraiser must net from the sales price all elements of the purchase price other than the real property component when valuing time-share units under a market value approach. The method of valuation utilized is within the administrative discretion of the property appraiser, and the valuation is presumed correct so long as the determination was arrived at lawfully. Blake v. Xerox Corp., 447 So.2d 1348 (Fla. 1984). The burden is on the taxpayer to show the property appraiser departed from the essential requirements of the law and the appraisal is not supported by any reasonable hypothesis of legality. 447 So.2d at 1350. Section 193.011, Florida Statutes (1983),[*] sets forth the eight criteria a property *418 appraiser must consider when determining the fair market value of real property for tax assessment purposes. When sales of comparable properties are used to determine fair market value, as was done here, the property appraiser performs a standard appraisal. In so doing, he considers all and uses some of the factors set forth in section 193.011. Bystrom v. Valencia Center, Inc., 432 So.2d 108 (Fla.3d DCA 1983), pet. for review denied, 444 So.2d 418 (Fla. 1984).
Petitioners claim the determination of the fair market value of the time-share units is invalid because the property appraiser failed to properly consider section 193.011(8), which directs the property appraiser to take into account the "usual and reasonable fees and costs" associated with the sale of the property. They argue that only the real property component of the sales price (i.e. the land, buildings and improvements thereon) should be used to determine the fair market value or "just valuation" of the property for tax assessment purposes. Petitioners urge the excessive marketing costs, the atypical financing costs, and the other extraordinary costs associated with fee time-share estates are part of the "reasonable fees and costs of sale" contemplated under section 193.011(8). Thus these costs should be deducted from the sales price in arriving at the net proceeds of the sale, the figure upon which the tax assessment is calculated under the market value approach.
The excessive costs of sale cited by petitioners comprise approximately 75-80% of the purchase price of the fee time-share units. However, as we read section 193.011(8), these costs are not among the "reasonable fees and costs of sale" contemplated by the legislature to be excluded from the ad valorem appraisal process. Subsection (8) must be read in pari materia with subsection (1) "which limits the consideration of sales costs to `reasonable fees and costs of purchase.'" Spanish River, 497 So.2d at 1304 (emphasis omitted). Our conclusion is the legislature intended the phrase "reasonable fees and costs of sale" to include only those fees and costs typically associated with the closing of the sale of real property such as reasonable attorney's fees, broker's commissions, appraisal fees, documentary stamp costs, survey costs and title insurance costs. See Note, Ad Valorem Taxation of Time-Share Properties: Should Time-Share Estates Be Separately Assessed and Taxed?, 37 U.Fla.L.Rev. 421 (1985). Until the legislature modifies section 193.011(8), the costs cited by the petitioners cannot be deducted from the purchase price of the time-share units as "reasonable fees and costs of sale." Thus, the property appraiser correctly applied the eighth criterion of section 193.011 by not deducting from the sales price of the time-share units the marketing costs and other costs cited by the petitioners. It was within the property appraiser's administrative discretion to determine the value of the time-share units under a market approach to value, and the petitioners have failed to *419 show the property appraiser did not follow the requirements of law in determining the assessment of the time-share units.
We note that in using the market approach to value, the property appraiser relied solely upon comparable sales of similar properties to arrive at the fair market value of the time-share units. We are mindful of the petitioners' point that an appraisal based on the original purchase price of the units includes the unusually high marketing costs necessary to attract potential buyers for the time-share units, costs they allege will never be recouped upon resale. Because there have been very few, if any, resales of these time-share units, no assessments have been based on resale prices. As the Fourth District Court of Appeal aptly notes in Spanish River, if a pattern of lower resale prices emerges, then the property appraiser will have to adjust his appraisals accordingly and reassess the time-share units. 497 So.2d at 1303.
Finally, the petitioners in the Oyster Pointe Resort case take issue with the property appraiser's determination that all fifty-two dwelling units in the Oyster Pointe Resort development should be assessed for 1983 ad valorem tax purposes pursuant to the provisions of section 192.037, Florida Statutes (1983). They allege that on January 1, 1983, six units in the Oyster Points development were whole ownership condominium units in which no time-share interests had been created and therefore should not have been assessed as time-share units. A careful reading of the record in this case reveals no evidence this issue was ever raised in the trial court or on appeal to the district court. The proper method for challenging the validity of a tax assessment is through the circuit court. § 194.171, Fla. Stat. (1983). We decline to address this evidentiary issue raised for the first time on appeal.
For the reasons expressed in this opinion, we approve the decision of the Fourth District Court of Appeal holding section 192.037, Florida Statutes (1983), constitutional. We also hold the property appraiser correctly applied the eighth criterion of section 193.011, Florida Statutes (1983), and properly assessed the time-share units under section 192.037 by assessing each individual time-share week using the market approach to value.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[*] Section 193.011 provides as follows:

In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.