767 So.2d 494 (2000)
Rob TURNER, as Hillsborough County Property Appraiser; and Larry Fuchs, as Executive Director of the Florida Department of Revenue, Appellants,
v.
TOKAI FINANCIAL SERVICES, INC., d/b/a Master Lease, Appellee.
No. 2D99-1857.
District Court of Appeal of Florida, Second District.
May 24, 2000.
*495 William D. Shepherd, General Counsel, Tampa, for Appellant Rob Turner.
Robert A. Butterworth, Attorney General, and Michael R. Kercher and Mark T. Aliff, Assistant Attorneys General, Tallahassee, for Appellant Larry Fuchs.
Stanley H. Beck, Hallandale, and Evan J. Langbein of Langbein & Langbein, P.A., Aventura, for Appellee.
Gaylord A. Wood, Jr., and B. Jordan Stuart of Wood & Stuart, P.A., New Smyrna Beach, for William Markham and H.W. "Bill" Suber, Amici Curiae.
Benjamin K. Phipps, Tallahassee, for Florida Association of Property Tax Professionals and Florida Taxpayers' Coalition, Amici Curiae.
*496 Steven L. Brannock, Robert E.V. Kelly, Jr., and David C. Borucke of Holland & Knight LLP, Tampa, for Wal-Mart Stores, Inc., Amicus Curiae.
PARKER, Acting Chief Judge.
Rob Turner, as Hillsborough County Property Appraiser, and Larry Fuchs, as Executive Director of the Florida Department of Revenue (collectively Turner), challenge the trial court's order requiring Turner to deduct certain costs of sale from the market value of tangible personal property when assessing it for ad valorem tax purposes, and requiring Turner to apply that deduction to Tokai Financial Services, Inc.'s (Tokai) 1997 tax assessment. We reverse.
Tokai sued Turner, challenging the 1997 property tax assessment of its tangible personal property. The issue at trial was the value of some 500 pieces of office equipment: primarily copiers, fax machines, office furniture, and medical equipment. In his initial assessment, Turner utilized a "cost approach" to assess Tokai's equipment, applying depreciation to the original cost of the equipment. Turner made no adjustments for the functional or economic obsolescence of the equipment or for changes in the replacement cost of comparable new equipment. Tokai argued that its equipment should be assessed using the "market approach," valuing it based on its current market value in the used/refurbished equipment market. Tokai presented expert testimony at trial concerning the market value of its equipment. The trial court agreed with Tokai, and reduced its assessment to the market value of the equipment as calculated by Tokai's expert. Turner does not challenge this reduction.[1]
Tokai's expert also testified that, in her opinion, the assessment of Tokai's equipment should be further reduced from the market value to reflect certain costs of sale. These costs included 15 percent of the sales price for sales commissions, and an additional 5 percent of the sales price for advertising, warranties, delivery, installation, and product demonstration. Tokai's expert did not testify that Tokai had incurred these costs; rather, she testified that these were the expected costs of sale in the used/refurbished equipment market. Based on this testimony, the trial court ordered Turner to reduce Tokai's assessment by an additional 20 percent to reflect these "costs of sale." It is this further reduction that Turner challenges in this appeal.
The single issue in this case is whether the trial court erred in ruling that costs of sale must be deducted from market value in order to arrive at just valuation for ad valorem tax purposes. The Florida Constitution requires that "regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation...." Art. VII, § 4, Fla. Const. The Florida Supreme Court has defined "just valuation" as synonymous with "fair market value." See Walter v. Schuler, 176 So.2d 81, 85-86 (Fla.1965). Therefore, any deductions from "fair market value" mean that the property is not being valued at "just value." In light of this constitutional mandate and its interpretation by the supreme court, we must consider the application and effect of section 193.011, Florida Statutes (1997), which states:
193.011 Factors to consider in deriving just valuation.In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:

*497 (1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation, local or state land use regulation, or historic preservation ordinance, and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise authorized by applicable law. The applicable governmental body or agency or the Governor shall notify the property appraiser in writing of any executive order, ordinance, regulation, resolution, or proclamation it adopts imposing any such limitation, regulation, or moratorium;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.
Turner argues that the trial court's decision results in an unconstitutional application of the statute. Tokai argues that subsection (8) of the statute requires us to affirm the trial court's decision. After considering both the statute and the existing case law, we conclude that Turner's argument is correct for four reasons.
First, the question in this case is not whether the property appraiser is allowed to make a deduction for costs of sale when determining fair market value. Clearly, the property appraiser can make such a deduction when the circumstances warrant it. See Roden v. GAC Liquidating Trust, 462 So.2d 92, 94 (Fla. 2d DCA 1985); Southern Bell Tel. & Tel. Co. v. Broward County, 665 So.2d 272, 275 (Fla. 4th DCA 1995). The question in this case is whether the property appraiser is required to make such a deduction. The plain language of the statute clearly indicates that no such deduction is required.
From its title, it is clear that section 193.011 requires only that the property appraiser consider the listed factorsnot that he necessarily apply them. See Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981) (holding that a statute's title can assist in determining legislative intent). In addition, the language of the statute itself specifically requires only the consideration of the enumerated factors, not their application.
Further, in considering the application of this statute, the supreme court stated that "[i]n arriving at fair market value, the assessor must consider, but not necessarily use, each of the factors set out in section 193.011. The particular method of valuation, and the weight to be given each factor, is left to the discretion of the assessor...." Valencia Ctr., Inc. v. Bystrom, *498 543 So.2d 214, 216 (Fla.1989). See also Roden, 462 So.2d at 94; Haines v. Holley, 234 So.2d 152 (Fla. 2d DCA 1970); Spanish River Resort Corp. v. Walker, 497 So.2d 1299, 1303 (Fla. 4th DCA 1986) (noting that while the property appraiser must consider all eight criteria, the appraiser may "discard entirely" any criteria that is not probative of fair market value under the circumstances). We conclude that this court cannot require the property appraiser to apply a deduction for costs of sale to every personal property tax assessment. To do so would be to require the property appraiser to apply the value determined by subsection (8) when the statute requires only that the property appraiser consider that value.
Second, all of the statute's subsections must be read together in order to determine the statute's meaning, and the statute should be read so as to give meaning to each of the subsections. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). However, the trial court's reading of the statute renders subsections (1) and (8) redundant. The trial court apparently found "reasonable fees and costs of purchase" in subsection (1) to be the same as "reasonable fees and costs of the sale" in subsection (8). We conclude it was error to read the statute in this way. See Forsythe, 604 So.2d at 456 (noting that it is a cardinal rule of statutory construction that courts should avoid readings that render parts of the statute meaningless); Pinellas County v. Woolley, 189 So.2d 217, 219 (Fla. 2d DCA 1966). The "use of different terms in different portions of the same statute is strong evidence that different meanings were intended." Department of Prof'l Regulation v. Durrani, 455 So.2d 515, 518 (Fla. 1st DCA 1984).
In reading the statute as a whole, it becomes apparent that the legislature intended these subsections to require the property appraiser to consider two different values. Subsection (1) requires the property appraiser to consider "[t]he present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase...." § 193.011(1), Fla. Stat. (1997). This subsection appears to consider the transaction from the buyer's perspective and excludes those reasonable fees and costs the buyer would incur over and above the present cash value. Subsection (8), on the other hand, requires the property appraiser to consider "[t]he net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing...." § 193.011(8), Fla. Stat. (1997). This subsection appears to consider the transaction from the seller's perspective and excludes those reasonable fees and costs that the seller would pay out of the proceeds received from the buyer. When considered this way, it is clear that the "values" derived from subsections (1) and (8) may be different. The statute requires the property appraiser to consider these values, along with those derived from subsections (2) through (7), when determining just value. We reject Tokai's position that the statute requires the property appraiser to select the value generated by the application of subsection (8) and apply it in a blanket fashion to all assessments of tangible personal property.
Third, the purpose of section 193.011 is to assist property appraisers in discharging their constitutional obligation to tax property based on its just value. The supreme court has equated "just value" with "fair market value," and has held that fair market value "may be established by the classic formula that it is the amount a `purchaser willing but not obligated to buy, would pay to one willing but not obligated to sell.'" Walter, 176 So.2d at 86. The question, then, becomes what costs of sale, if any, must be deducted from the amount the willing purchaser paid the willing seller in order to reach "fair market value."
In attempting to define what costs should be deducted pursuant to the "costs *499 of sale" language in section 193.011(8), the Fourth District stated: "Such usual and reasonable fees and costs typically include reasonable attorney's fees, broker's commissions, documentary stamp costs, survey costs, appraisal fees, and title insurance costs. Internal expenditures such as marketing costs are generally not included within the scope of this section." Spanish River, 497 So.2d at 1304 (quoting Note, Ad Valorem Taxation of Time-Share Properties: Should Time-Share Estates be Separately Assessed and Taxed?, 37 U. Fla. L.Rev. 421, 436 (1985)). In this case, Tokai presented no evidence at trial concerning whether the "costs of sale" it sought to deduct were external costs or internal expenditures. In the absence of such evidence, Tokai failed to establish that a deduction for costs of sale under subsection (8) was proper.
Further, from the arguments in its brief and at oral argument, it appears that Tokai seeks to include various internal expenditures within the scope of subsection (8). For example, Tokai seeks a deduction for salesmen's commissions, apparently equating them with the broker's commissions referenced in Spanish River. However, when the salesman is an employee of the seller, commissions would seem to be an internal expenditure rather than an external cost of sale. In addition, Tokai's proposed deductions for advertising, warranties and product demonstration appear to be marketing costs which, as specifically noted in Spanish River, are generally not included as costs of sale under section 193.011(8). Therefore, we reject Tokai's argument that it should be allowed a deduction for these items.
Turner admits that certain costs should be deducted from the sales price of an item in order to determine fair market value under some circumstances. For example, Turner notes that the property appraiser should deduct those amounts not properly included in the sales price, such as sales tax and extended warranties priced separately from the item.[2] However, in this case, Tokai seeks to have a "costs of sale" deduction for general costs of doing business. Valuing property after the costs of doing business have been deducted does not result in an assessment at "just value."
Moreover, logic dictates that the "fair market value" of an item generally includes a component for costs of sale. When the willing, but not obligated, seller determines what price he will accept for a certain item of property, he takes into account those costs that he will incur in making the sale. These costs drive the seller's bottom line; i.e., the price below which he will not go. Therefore, the costs of sale have already been factored into the market value of the property when it is placed for sale. To allow a blanket deduction for costs of sale gives a windfall to the seller who has already accounted for them in his sales price.
Fourth, "[d]emocratic philosophy mandates that every taxpayer be treated consistently, and that everyone contribute his fair share, no more and no less, to the tax revenues." ITT Community Dev. Corp. v. Seay, 347 So.2d 1024, 1028 (Fla.1977); Fuchs v. Robbins, 738 So.2d 338, 341 (Fla. 3d DCA 1999). Tokai's fair share is measured by the fair market value of its personal property. Tokai should not be entitled to a lower tax assessment because it chose to expend excessive amounts on marketing its equipment.
If comparable sales establish the market value of two identical properties, we know of no court decision which would allow the buyer of the first parcel to *500 insist on a value 55% less than the second, because the seller of the former parcel chose to expend an inflated percentage sum to market his property in order to obtain a purchaser.
Spanish River, 497 So.2d at 1304.
For all of the above reasons, both the language and the purpose of section 193.011 are thwarted by the trial court's order requiring Turner to deduct costs of sale from the fair market value of Tokai's equipment. Therefore, that portion of the trial court's order requiring a deduction of 20 percent from the fair market value of Tokai's equipment is reversed.
In addition to his constitutional argument, Turner argues that the trial court erred for two additional reasons, both of which we reject. First, Turner argues that the legislature intended for subsections (1) and (8) to apply only to real property. While there is some legislative history to support this argument, no language limiting the application of these subsections exists in the enacted statute. Moreover, at least two courts have considered these subsections in the context of personal property. See Havill v. Scripps Howard Cable Co., 742 So.2d 210 (Fla. 1998); Southern Bell, 665 So.2d at 272. Therefore, this argument is without merit.
Second, Turner argues that an actual sale must occur before the property appraiser must consider the costs of sale. Nothing in the statute requires an actual sale to occur before subsection (8) is triggered. Thus, the property appraiser must consider the costs of sale when determining fair market value regardless of whether an actual sale has occurred. See Southern Bell Tel. & Tel. Co. v. Dade County, 275 So.2d 4, 8 (Fla.1973) (noting that section 193.011 requires the property appraiser to put himself in the position of the parties to a hypothetical sale when considering the statutory factors if no actual sale has occurred). However, the actual sale of personal property may be one circumstance in which the property appraiser is required to apply the value that results from the application of subsection (8), rather than simply considering it. See Bystrom v. Equitable Life Assurance Soc'y, 416 So.2d 1133, 1144 (Fla. 3d DCA 1982) (noting that while subsection (8) must be considered in making every assessment, it is only appropriately applied when there has been an actual sale).
Reversed and remanded.
CASANUEVA and DAVIS, JJ., Concur.
NOTES
[1] Amicus Curiae Markham argued in his brief that the trial court erred in finding that there was reliable data of comparable sales that Turner should have used to assess the property under the market approach. Because the parties to the appeal did not raise this issue and because amici lack standing to raise issues not raised by the parties, this issue was not properly before this court. See Acton v. Fort Lauderdale Hosp., 418 So.2d 1099, 1101 (Fla. 1st DCA 1982).
[2] We note that Turner made this concession in the context of deductions for costs of sale under section 193.011(8) when the market value approach is being used. The issue of whether deductions for sales tax are appropriate in any other context was not briefed by any of the parties to this appeal and was not before this court. Therefore, we express no opinion as to whether sales tax is properly included or deducted during the valuation of tangible personal property in any other context or under any other valuation method.